IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 17-CR-02236 WJ |
| ) | |
| DULCE ISABEL RAMOS-BURCIAGA, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' RESPONSE TO DEFENDANT'S "MOTION TO SUPPRESS"**
**(DOC. 58)**

The United States of America responds in opposition to Defendant Dulce Isabel Ramos-Burciaga's "Motion to Suppress".  Defendant in essence alleges that: (1) she did not give consent to search the backpack; (2) any consent that was given was invalid because it was not freely and intelligently given without implied duress or coercion; (3) consent to search the backpack was invalid because it followed an unlawful seizure; and (4) pre-*Miranda* statements made during the interview following the arrest must be suppressed.

The United States disagrees.  The evidence in this case establishes that the Defendant's interaction with Special Agent ("SA") Jarrell Perry of the Drug Enforcement Administration ("DEA") was consensual, and that once SA Perry observed two black electrical taped bundles of heroin, he had probable cause to arrest the Defendant.

**Summary of Facts**

On August 4, 2017, the Defendant exited a Greyhound Bus in Albuquerque, NM.  She retrieved a black rolling suitcase from under the bus and walked inside of the terminal waiting area.  While inside the terminal, DEA Agent Perry asked for permission to speak with her and

1

determined that she spoke English. After she agreed, SA Perry asked her general questions about her travel. SA Perry quickly checked her ticket and identification and returned it to the defendant. SA Perry explained that he checks the station for security reasons and speaks with all the passengers. SA Perry then continued to politely ask questions about her travel and asked her if she had any luggage. The Defendant walked over and showed SA Perry her black rolling suitcase. She verbally consented to search the black suitcase when she said "Yeah, sure". SA Perry asked the Defendant if she had any additional luggage and specifically inquired about the bag on her back. SA Perry asked for permission to search the backpack. The Defendant asked "why" and SA Perry again explained the search is to see if she has anything illegal. SA Perry then asked the Defendant if she would show him the contents of the backpack. The Defendant said "Yeah, of course" and opened the bag. SA Perry sought permission to see the bottom of the backpack as the Defendant nervously moved a pink makeup case or wallet back and forth inside the bag. The Defendant said "Yeah, sure", but continued to shift the item back and forth. SA Perry again asked if she would show him the bottom of the bag. The Defendant said, "Yes" and moved the item. SA Perry saw two oblong packages wrapped in electrical tape. Based on his training and experience SA Perry recognized the packages to be narcotics and placed the Defendant under arrest.

    Two other agents were present and had little participation in the encounter. SA Larry Pantoja's participation was limited to a back-up role. SA Pantoja approached SA Perry and the Defendant after the Defendant showed SA Perry where her black rolling suitcase was located. SA David Nutley was present in the Greyhound Terminal, but did not participate in the encounter.

**Statement of Law**

I. **Consent to Search**

There is no controlling significance with respect to whether a person knows he has the right to refuse consent or not. *United States v. Watson*, 423 U.S. 411, 424 (1976)). Morever, the law assumes a reasonable person can still exercise free choice even though there is an inherent pressure when someone is subjected to scrutiny of law enforcement. *Id*. at 535.

The Tenth Circuit has articulated a two-step test for determining the validity of consent: "(1) There must be a clear and positive testimony that consent was unequivocal and specific and freely given; and (2) The government must prove consent was given without duress or coercion, express or implied." *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007) (internal quotation marks omitted). The factors "relevant to the consent inquiry," include:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Thompson,* 546 F.3d 1223, 1226 (10th Cir. 2008). The inquiry is into the totality of the circumstances, and no one factor is dispositive. *Id.*

II. **Consensual Encounters**

A consensual encounter is simply voluntary cooperation between a citizen and a police officer. *Michigan v. Chesternut*, 489 U.S. 567-576 (1988). Consensual encounters are not seizures within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing. *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).

Courts have identified several factors that could lead to a reasonable innocent person to believe he is not free to terminate the encounter, including: (1) the threatening presence of several officers; (2) the brandishing of a weapon by an officer; (3) physical touching by an officer; (4) aggressive language or tone of voice by an officer indicating compliance is compulsory; (5) prolonged retention of an individual's personal effects; (6) a request to accompany an officer to the police station; (7) interaction in a small, enclosed, or non-public place; and (8) absence of other members of the public. *United States v. Rogers*, 556 F.3d 1130, 1137–38 (10th Cir. 2009). The Tenth Circuit also considers whether the officer informed the individual that he is free to leave. *See United States v Ledesma*, 447 F.3d 1307, 1314-15 (10th Cir. 2006). The Court uses an objective standard and applies a reasonable person test. *United States v. Laboy*, 979 F.2d 795, 798 (10th Cir. 1992).

The Fourth Amendment permits law enforcement to approach an individual in a public place, identify himself as a law enforcement officer, and ask questions. *Florida v. Royer*, 460 U.S. 491, 496-7 (1983). Whether an encounter is consensual is determined by the totality of the circumstances. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)

**Argument**

I.   **Defendant Gave Express Consent to Search her Bag**

During the encounter, the Defendant gave express consent to the search of her bag. The search at issue is the Defendant opening her own bag and moving the contents of the bag. The analysis for express consent is whether the Defendant gave verbal or written consent to opening her own bag and moving the contents. *See United States v. Ramos*, 194 F. Supp. 3d 1134, 1182 (10th Cir. Feb. 27, 2018)

Here, there is clear evidence she gave verbal consent to opening the bag herself and to revealing the contents. During the consensual encounter, Agent Perry asked, "Can you just open

up, show me the contents then…without me searchin' it? That okay with you?" Transcript of audio recording (attached as Government's Exhibit 1 at 9). The Defendant then replied, "Yeah, of course". Exhibit 1 at 10. Agent Perry then asked, "Can you just take your stuff outta there so I can see the bottom?" Exhibit 1 at 10. The Defendant responded, "Yeah, sure". Agent Perry then asked a second time, "…can you take this out so I can see the bottom?" Exhibit 1 at 10. The Defendant said, "Yes." Exhibit 1 at 10. At each stage of the search, the Defendant clearly gave express consent by verbally agreeing to reveal the contents of the bag and moving the contents of the bag.

SA Perry asked the Defendant for consent to search when he asked if she would show him the contents of the bag and when he asked if she would show him the bottom of the bag. Each time the Defendant verbally consented by responding in the affirmative and therefore gave express consent to the search.

## II.     Defendant Gave Implicit Consent to Search her Bag

Since express consent was given, the validity of the search does not rely on implied consent. However, in the absence of express consent, the court can find implied consent through a defendant's actions. *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007).

Assuming for the sake of argument express consent was not given, the Defendant consented through her actions. When asked if she would reveal the contents of the bag, the Defendant took the bag off of her back and opened it. Doc. 31 at 6-7. When asked if she could move the contents to allow Agent Perry to see the bottom of the bag, she moved the contents. Doc 31 at 7.

Defense counsel argues that there was no implied consent because Agent Perry did not form a belief that the Defendant consented to the search. Doc 58 at 12. Defense counsel again

attempts to support this contention with Agent Perry's statement "she didn't answer the question for giving me permission to search it or not". Doc 58 at 11. As previously stated, this is a mischaracterization of the statement. This statement does not refer to the Defendant being asked to open her bag herself.

Furthermore, the argument about Agent Perry's alleged subjective belief is misplaced. The standard is "Consent may instead be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to *a reasonable officer*." *Guerrero*, 472 F.3d at 789–90 (emphasis added). In *States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012), the court does not inquire into whether the officers thought they had consent to search. Instead, the court examined the defendant's conduct and determined if the defendant's actions "could have been reasonably interpreted" as communicating consent. *Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012). Here, like in *Patten*, the Defendant opened her bag after being asked if she would. *United States v. Patten,* 183 F.3d 1190, 1192–95 (10th Cir.1999). Thus, the holding that implied consent was validly given is warranted because a reasonable officer would believe that a person opening their bag after being asked to is consent for the officer to look in the bag.

    **III.**   **Defendant's Consent was Valid**

        **a.  Consent was Voluntary**

The Tenth Circuit has articulated a two-step test for determining the validity of consent: "(1) There must be a clear and positive testimony that consent was unequivocal and specific and freely given; and (2) The government must prove consent was given without duress or coercion, express or implied." *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007) (internal quotation marks omitted).

The first prong is satisfied as the Defendant gives both express and implied consent at each stage of the search. The consent was unequivocal because the Defendant quickly responds in the affirmative when asked to show the contents of the bag and then move the contents of the bag. She did not equivocate, hesitate or even remain silent. The consent was specific because Agent Perry asked specifically, "Can you just open up, show me the contents then…", to which the Defendant gives express consent by saying, "Yeah of course". Exhibit 1 at 9-10. The Defendant then gave consent to move her items as she is asked if she would move the items and explicitly said "Yeah, sure". Exhibit 1 at 10.

The Defendant may contend that she did not consent because she did not move the items so Agent Perry could see the bottom when first asked. However, she was asked specifically if she would remove the item blocking the bottom of the bag. Exhibit 1 at 10. The Defendant again expressly stated, "Yes" and proceeded to move the item. This is clear unequivocal and specific consent not only expressed in clear testimony (Doc. 31 at 6), but also shown by the audio recording of the Defendant.

The Defendant gave consent without duress or coercion, express or implied. Integrating the lessons of *United States v. Drayton*, 536 U.S. 194, 201 (2002) and other cases, the Tenth Circuit has identified a number of factors "relevant to the consent inquiry," which include:

> the location of the encounter, particularly whether the defendant is in an open public place where he is within the view of persons other than law enforcement officers; whether the officers touch or physically restrain the defendant; whether the officers are uniformed or in plain clothes; whether their weapons are displayed; the number, demeanor and tone of voice of the officers; whether and for how long the officers retain the defendant's personal effects such as tickets or identification; and whether or not they have specifically advised defendant at any time that he had the right to terminate the encounter or refuse consent.

*United States v. Thompson,* 546 F.3d 1223, 1226 (10th Cir. 2008). The inquiry is into the totality of the circumstances, and no one factor is dispositive. *Id.*

The above factors applied to this case weigh heavily in favor of a finding of voluntary consent. Defendant was in the public bus terminal, within view of persons other than law enforcement officers. *See id.* at 1227 ("[T]he presence of other citizens during a police encounter is one factor suggesting its consensual nature."). SA Perry did not physically restrain or touch Defendant. He did not display his weapon to Defendant. *See id.* (lack of touching or display of force "tends to suggest the encounter was consensual"). He was wearing plain clothes, not uniform. Only three officers were present in the terminal. Only two officers interacted with the Defendant, one fewer than in *Drayton*. SA Perry spoke to Defendant in a consistently polite tone of voice. SA Perry did not retain any of Defendant's personal effects for more than the few seconds necessary to examine them, with Defendant's consent.

The sole factor not weighing in favor of consent is that SA Perry did not specifically advise Defendant that she had the right to terminate the encounter or refuse consent. The Tenth Circuit, however, has found that this factor, having been rejected as a requirement by the Supreme Court, "should carry little weight" in the analysis. *Thompson*, 546 F.3d at 1228. Taking into account the totality of the circumstances, the Defendant consented without duress or coercion.

      **b. Alleged Language Barrier did not Vitiate Consent**

There are not language barriers in this case that vitiate consent. While it is correct language barriers "can vitiate consent", no such barrier exists in this case. *United States v. Lopez-Guzman,* 145 Fed,Appx 627, 629 (10th Cir 2005)(citing *United States v. Hernandez,* 913 F.2d 1506, 1510 (10th Cir. 1990)). In *Lopez-Guzman*, the district court found, and the appellate court upheld, that the consent was valid because the defendant could sufficiently respond to the officer's requests. *Lopez-Guzman,* 145 Fed,Appx at 629.

The Defendant's ability to understand and converse sufficiently is clearer than in *Lopez-Guzman*. In *Lopez-Guzman*, the court found the defendant could converse sufficiently even though the officer spoke in English and poor Spanish and the defendant responded only in Spanish. *Id*. Additionally, the defendant responded inappropriately at times. *Id*. For example, when asked to exit the car, the defendant began to move the car forward. *Id*.

Here, the Defendant more than sufficiently conversed with Agent Perry. First, when asked if she spoke English, the Defendant said "yeah". Exhibit 1 at 1. Unlike *Lopez-Guzman*, the Defendant was afforded an opportunity to express she did not understand English. Furthermore, the Defendant responded in English during the entirety of the interaction. Importantly, the Defendant always responded appropriately. There were no incongruences between the question and response that could cast doubt on what was understood, like those present in Lopez-Guzman.

Moreover, after her arrest, the Defendant was asked in Spanish, "Did you understand everything he was telling you?", referring to if she understood SA Perry. Transcript of interview, attached as Government's exhibit 2. The defendant responded "more or less" in Spanish. Exhibit 2 at 2. The Defendant was then asked, in Spanish, to clarify what she meant by more or less and was asked "When you say more or less, did you understand everything when he asked you for permission to look at your, search your purse". Exhibit 2 at 2. The Defendant responded "mh-hm" *Id*.

There was clearly no language barrier as the Defendant was asked and confirmed she understood English before she was asked for consent to search. The Defendant responded appropriately throughout the encounter. Most significantly, after the encounter she was asked in Spanish and confirmed she understood when asked for consent to search the bag.

### c. Agent Perry did not Exceed the Scope of Consent

The scope of a search is generally defined by its expressed object, and is limited by the breadth of consent given, applying an objective reasonableness test to measure what a typical person would have understood between the officer and the suspect. *See Untied States v Anderson,* 114 F.3d 1059, 1065 (10th Cir. 1997). Any limitation on the extent of a search must come from the person consenting and not from law enforcement. *See United States v. Gordon,* 173 F.3d 761, 766 (10th Cir. 1999). SA Perry did not "direct" the defendant to move the items so he could see the bottom of the bag. Doc. 58 at 13. Rather, SA Perry sought consent to see the bottom of the bag by asking "Can you just take your stuff outta there so I can see the bottom?" Exhibit 1 at 10. The Defendant verbally consented. A reasonable person would have understood that she was consenting to a search and showing the bottom of the bag.

Additionally, by asking for consent, SA Perry gave the Defendant the opportunity to limit the search or object. Moreover, a defendant's failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent." *United States v. Patten*, 183 F.3d 1190, 1194 (10th Cir. 1999).

The Defendant defined the scope of the search by verbally consenting to moving the items to allow SA Perry to see the bottom of the bag. The Defendant in no way attempted to limit the search of the contents of the bag by objecting to move the items. Defense counsel does not provide any evidence that SA Perry exceeded the scope of consent or even suggest what the scope of consent was. *United States v. Osage*, 235 F.3d 518 (10th Cir. 2000) is cited by the defense. However, *Osage*, is not applicable in this case. In *Osage*, the court held before an officer may actually destroy or render completely useless a container which would otherwise be within the scope of a permissive search, the officer must obtain explicit authorization. *Osage*,

235 F.3d at 522.  Here, no container was destroyed or rendered completely useless.  More significantly, SA Perry sought and was given explicit authorization to see the bottom of the bag.

### IV.     Defendant was Not Unlawfully Seized Because the Interaction Was a Consensual Encounter

The Defendant was not seized because the interaction was a consensual encounter.  There are three types of encounters that citizens can have with police: voluntary cooperation, investigative detention, and a formal arrest.  *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008) (quoting *Terry v. Ohio*, 392 U.S. 1, 13 (1968)).  Consensual encounters are not seizures within the meaning of the Fourth Amendment and need not be supported by suspicion of criminal wrongdoing.  *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000).  It is well established that "a seizure does not occur simply because a police officer approaches an individual and asks a few questions" *United States v. Lopez*, 443 F.3d 1280, 1283 (10th Cir 2006) (quoting *Florida v. Bostick,* 501 U.S. 429, 434 (1991).  A person has only been seized if police conduct would have communicated to a reasonable person that person was not free to decline officers requests or otherwise terminate the encounter.  *Florida v. Bostick,* 501 U.S. 429, 437 (1991).

The Tenth Circuit has stated to determine if an individual has been seized, the court should several factors including:

> (1) the threatening presence of several officers; (2) the brandishing of a weapon by an officer; (3) physical touching by an officer; (4) aggressive language or tone of voice by an officer indicating compliance is compulsory; (5) prolonged retention of an individual's personal effects; (6) a request to accompany an officer to the police station; (7) interaction in a small, enclosed, or non-public place; and (8) absence of other members of the public.

*United States v. Rogers*, 556 F.3d 1130, 1137–38 (10th Cir. 2009).  The Tenth Circuit also considers whether the officer informed the individual that he is free to leave.  *See United States v Ledesma*, 447 F.3d 1307, 1314-15 (10th Cir. 2006).  No one factor is dispositive.  *Rogers*, 556 F.3d at 1138.

Here, the factors weigh heavily against finding a seizure.  The Defendant was met with only two officers.  There were no weapons visible and neither SA Perry nor SA Pantoja brandished a weapon.  Neither agent physically touched the Defendant.  The audio recording shows the language was neutral and at some points friendly.  SA Perry only held the Defendant's identification long enough to examine it and quickly returned it.  SA Perry did not retain any of the Defendant's other personal effects for any amount of time.  SA Perry did not request the Defendant to accompany him to the police station and the interaction occurred in a large public waiting area inside of the Greyhound terminal with other members of the public present.  Although SA Perry did not inform the Defendant she was free to leave, the warning is not required.  Taking into account the totality of the circumstances, the Defendant was not seized.

The Defendant argues she was seized because "she had every reason to believe she was stopped and her compliance was necessary."  The Defendants subjective belief is not a factor in determining if the person had been seized.  The inquiry is an objective one.  The inquiry presupposes an innocent reasonable person.  *United States v. Laboy*, 979 F.2d 795, 798 (10th Cir. 1992).

Defense counsel suggests that the Defendant's belief that she was not free to go was confirmed because she asked, "What happened that you stopped me" and SA Perry responded, "it's just for security."  Doc 58 at 14.  It is unclear that the Defendant says "that you stopped me".  What is clear is that the Defendant asked "what happened."  SA Perry did not confirm that she had been stopped.  The Defendant did not ask if she could leave, and none of SA Perry's actions communicated that she was not free to leave.

Furthermore, SA Perry explained, "Yeah, we just check the station here.  It's just for security, speaking to all the passengers."  A reasonable innocent person would have felt free to terminate the encounter.

Defense counsel also argues there were "multiple officers positioned to restrict movement supports finding a seizure".  Doc 58 at 15.  This is problematic for multiple reasons.  First, Defense counsel supports this contention stating *United States v. Mendenhall* suggests ""threatening presence of several officers" might alone indicate seizure".  Doc. 58 at 15.  The court has been clear that "a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter" *Florida. v. Bostick*, 501 U.S. 429, 439 (1991); *United States v. Drayton*, 536 U.S. 194, 201 (2002) (The proper inquiry necessitates a consideration of all the circumstances surrounding the encounter.); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (a person has been "seized" within the meaning of the Fourth Amendment only if, in *view of all of the circumstances* surrounding the incident, a reasonable person would have believed that he was not free to leave); *United States v. Rogers*, 556 F.3d 1130, 1137–38 (10th Cir. 2009) (No single factor is dispositive.)

Second, although two officers could be considered multiple officers, the factor is "threatening presence of *several* officers."  *Rogers*, 556 F.3d at 1138.  The presence of two officers has not been considered several officers.  Additionally, the presence of the two officers was not threatening.  In *United States v. Jones*, 701 F.3d 1300 (10th Cir. 2012), the court did not consider the presence of three officers having a "casual encounter" to be a threatening presence of several officers.  *Jones*, 701 F.3d at 1313.  Likewise, here, the casual nature of the

13

conversation and only two plain-clothed officers present supports a finding that there was not a threatening presence of several officers.

Finally, the agents were not positioned to restrict movement. Agent Pantoja was standing behind the seating. One would assume that a person would not want to climb over the back of a seat. Standing behind stationary seats would not restrict typical movement.

Even if the Defendant was detained, detention does not automatically render consent involuntary. *United States v. Ramos*, 194 F. Supp. 3d 1134, 1178 (10th Cir. Feb. 27, 2018). An investigative detention, standing alone, is not so coercive as to render the consent of all detained persons involuntary." *United States v. Olivares–Campos*, 276 Fed.Appx. 816, 824 (10th Cir.2008). "[D]etention is only one factor to be considered in determining whether consent was voluntarily and freely given based on the totality of the circumstances." *United States v. Contreras*, 506 F.3d at 1037. Here, the majority of the relevant factors demonstrate that a reasonable person would not have felt coerced to consent to a search.

### V.      Statements Made in Interview Prior to Miranda Warnings

The Defendant argues that the statement made during the post arrest interview, prior to Miranda warnings must be suppressed. The questions asked by SA Pantoja about whether the Defendant understood SA Perry during the interaction at the Greyhound terminal were not intended to illicit an incriminating response. However, the United States recognizes there may have been a technical *Miranda* violation and therefore the Defendant's statement that she understood Agent Perry is inadmissible in the case in chief. The United States does not intend to use the statement in the direct case. However, the statement was voluntary for due process purposes. The United States preserves the ability to introduce the statement for impeachment purposes if the Defendant testifies in her own defense. *Harris v. New York*, 401 U.S. 222, 226

(1971) (The shield provided by Miranda cannot be perverted into a license to use perjury by way of a defense, free from the risk of confrontation with prior inconsistent utterances).

## Conclusion

The Court should deny the Defendant's motion to suppress. The Defendant gave valid verbal consent to search the bag. The consent was voluntary because consent was given free of coercion or duress and no language barriers exist. Consent was valid because the interaction was a consensual encounter and therefore the Defendant was not seized.

Respectfully submitted,

JOHN C. ANDERSON
United States Attorney

*Electronically filed*

Rumaldo R. Armijo
Assistant United States Attorney
PO Box 607
Albuquerque, NM 87103
(505) 346-7274

I HEREBY CERTIFY that I electronically filed the
foregoing with the Clerk of the Court
using the CM/ECF system which will send
notification to defense counsel of record.

    *Filed Electronically*
Rumaldo R. Armijo
Assistant United States Attorney