# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

  vs.                                                                    Case No. 1:17-cr-002236 WJ

DULCE ISABEL RAMOS-BURCIAGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTIONS ON DESTRUCTION OF EVIDENCE

THIS MATTER comes before the Court on Defendant's Motion for Hearing Concerning Destruction of Evidence, filed November 27, 2017 **(Doc. 25),** and Defendant's Supplemental Brief, filed January 22, 2018 **(Doc. 34)**. Having considered the parties' written and oral arguments, and applicable law, the Court finds that Defendant's motions are not well-taken and, therefore, are **DENIED.**

## BACKGROUND

On August 22, 2017, Defendant was indicted with

> unlawfully, knowingly, and intentionally possess[ing] with intent to distribute a controlled substance, 1 kilogram and more of a mixture and substance containing a detectable amount of heroin. In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

**Doc. 12.** On August 4, 2017, Defendant was arrested by DEA Agent Jarrell Perry, after exiting a Greyhound bus at the downtown Albuquerque Greyhound station. **Doc. 25.** Agent Perry allegedly discovered heroin inside Defendant's handbag, after an allegedly consensual search.

The search is the subject of a separate motion to suppress filed by the Defendant. *See* **Doc. 58.** On August 9, 2017, Defense counsel sent a preservation request to Greyhound to

> "preserve all Greyhound surveillance security video and audio recordings made on August 4, 2017 in and around the Albuquerque Greyhound bus terminal at 320 1st St. SW. This includes surveillance camera video of the lobby, the passenger loading area, the office, the wash bay, the luggage storage areas, the cleaning/'fueling bays that are located one block immediately south of the bus station, as well as any other public areas in the surrounding area that your company surveils. I also request surveillance videos of the Greyhound office, the passenger waiting area, ticketing office, and any on-board video from eastbound Greyhound buses arriving in Albuquerque on Agust [sic] 4, 2017"

**Doc. 25-1.** The preservation request was sent to the manager of Greyhound's Albuquerque bus terminal, Marie Gomez-Avila, the associate general counsel for Greyhound in Dallas, and local counsel.

The Court granted Defendant's Motion for ex-parte motion for order for subpoena *duces tecum* on September 20, 2017 **(Doc. 20)**. The subpoena was served on October 19, 2017. **Doc. 21.** Greyhound responded to the subpoena on November 17, 2017, **(Doc. 21)** asserting that the local station manager had not preserved the video at the time she received the preservation request. The station manager mistakenly thought that she did not need to preserve video on the basis of a preservation request, and only had to preserve video when she received a subpoena. *See* **Doc. 21.** By the time the subpoena was received, the relevant video had been overwritten.

Ms. Marie Avila-Gomez is the customer experience manager for Greyhound Albuquerque, in charge of the Albuquerque terminal. She is responsible for overseeing private security guards at the station, and ensuring Greyhound's security procedures are followed. She is also responsible for responding to preservation requests and copying video surveillance.

2

All employees go through a security training program. For station managers, the training includes how to engage with local law enforcement and how to engage with local government. This includes training managers on how to ask for assistance from local law enforcement

DEA Agent Jarrell Perry works drug interdiction at the Albuquerque Greyhound and Amtrack terminals. He has no office in the Greyhound station, although he has a key to a conference room at the station. Agent Perry was given the key by Ms. Gomez-Avila.

In April 2017, David Streiff, security operations manager for Greyhound in North America, requested a meeting with DEA agent Perry and Marie Gomez-Avila to discuss the parameters in which law enforcement may operate in the Albuquerque Greyhound terminal. The DEA did not have any input on these procedures. At the meeting, they also discussed the procedure for DEA submitting administrative subpoenas to Greyhound for video recording. Greyhound reiterated that they would need a subpoena for any requests for copies of video surveillance from the DEA. They did not discuss subpoenas or preservation letters submitted by defense counsel. Mr. Streiff expressed that Greyhound wanted the DEA to continue working drug interdiction at the terminal. Mr. Streiff also asked Agent Perry to email a summary of arrests to him, to know what criminal activity occurred on Greyhound property.

At the end of the meeting, Ms. Gomez-Avila asked Mr. Streiff, in a "side-bar", how she should respond to preservation requests and subpoenas for video footage. Mr. Streiff told her that she didn't need to act on hand-delivered "legal documents" until attorneys from Greyhound's corporate office advised her. Based on this conversation, Ms. Gomez-Avila mistakenly thought that she did not need to respond to preservation requests until instructed to do so by Greyhound's legal department. Thus, when she received the preservation request from Defense counsel in this case, she did not preserve the video. Ms. Gomez-Avila thought that

"preservation *request*" meant that responding was optional. The Court finds Ms. Gomez-Avila's explanation credible. Greyhound's legal department has since told Ms. Gomez-Avila to comply with all preservation requests without further instruction.

Mr. Streiff drafted operating procedures that outlined how local and state law enforcement would be allowed to operate in Greyhound terminals. The operating procedures specified where law enforcement could operate at Greyhound terminals, and where they had to be accompanied by Greyhound employees.

Two years ago, Greyhound received a grant from a federal grant program, Over-the-Road Bus Security Grant Program. Greyhound's grant was earmarked for camera surveillance and video operations. Greyhound did not receive any funds over the last two years, and none of the $468,000 grant went to the Albuquerque bus terminal. Greyhound also submitted a security plan to the Department of Homeland Security. This security plan is required in order to apply for TSA grant money. However, there were no formal or informal agreements between Greyhound and the DEA. The DEA does not share in the expense of responding to defense counsel preservation requests, or in any of the security costs borne by Greyhound in Albuquerque.

Agent Perry had previously supplied DVDs for Greyhound's Albuquerque terminal to use to respond to DEA subpoenas for copies of video surveillance. Mr. Streiff has since instructed Ms. Gomez-Avila not to use those DVDs.

On April 11 and 17, 2018 the Court held evidentiary hearings, and heard testimony from Ms. Gomez-Avila, Mr. Streiff, and four DEA agents. At the hearing, the Government objected to certain questions and asserted certain privileges. The Court sustained the objection, pending a determination of whether the Court should hold an *in camera* hearing.

**DISCUSSION**

Defendant argues that her Fifth Amendment due process rights were violated by the destruction of video surveillance of her arrest by Agent Perry.

## I. Destruction of Evidence.

"A [Fifth Amendment] due process violation occurs when the government fails to preserve constitutionally material evidence." *United States v. McIntosh*, 573 F. App'x 760, 762 (10th Cir. 2014); *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). To establish such a violation, the defendant must show the government: "(1) destroy[ed] evidence whose exculpatory significance [wa]s apparent before destruction; and (2) the defendant … [is] unable to obtain comparable evidence by other reasonably available means." *Trombetta,* 467 U.S. at 489, 104 S.Ct. at 2534 (internal quotation marks omitted). "If the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence." *United States v. Bohl*, 25 F.3d 904, 909–10 (10th Cir. 1994) (citing *Youngblood*, 488 U.S. at 58, 109 S.Ct. 333).

Defendant sought sanctions for destruction of evidence, but did not argue whether the evidence was exculpatory, potentially useful, or constitutionally material. The focus of the hearing was the threshold issue of whether Greyhound was acting as an agent of the Government. As explained below, the Court finds that neither Greyhound nor Ms. Gomez-Alvira acted as agents of the Government.

## II. Are Greyhound's Actions Attributable to the Government?

The Government first argues that Greyhound could not have violated Defendant's due process rights because the bus company is not a Governmental actor or entity. This argument

was rejected by *United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), which held that private parties can act as Governmental agents. *See Ackerman,* 831 F.3d at 1300 ("Even … NCMEC isn't a governmental entity, that doesn't necessarily mean its searches escape the Fourth Amendment's ambit. … [T]he law has [always] prevented agents from exercising powers their principals do not possess and so cannot delegate."). The Court must therefore determine whether Greyhound was acting as an agent of the Government.

"An agent of the government, like the government itself, is restrained by the language of the Constitution." *United States v. Alexander*, 447 F.3d 1290, 1294 (10th Cir. 2006); *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 614, 109 S.Ct. 1402, 103 L.Ed.2d 639 (1989) ("Although the Fourth Amendment does not apply to a search or seizure, even an arbitrary one, effected by a private party on his own initiative, the Amendment protects against such intrusions if the private party acted as an instrument or agent of the Government.").

"[A]ctions of private entities can sometimes be regarded as governmental action for constitutional purposes." *Lebron v. Nat'l R.R. Passenger Corp.,* 513 U.S. 374, 378, 115 S. Ct. 961, 964, 130 L. Ed. 2d 902 (1995) (internal citations omitted). This determination is based on the facts and circumstances of the case. *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 632, 111 S. Ct. 2077, 2089, 114 L. Ed. 2d 660 (1991). "[C]onstitutional standards are invoked only when it can be said that the [government] is *responsible* for the specific conduct of which the plaintiff complains. Constitutional liability attaches only to those wrongdoers who carry a badge of authority of [the government] and represent it in some capacity. " *Id.* (internal citations and quotation marks omitted). For example, multiple Tenth Circuit cases hold that a private party acting as an agent of the Government may violate a Defendant's Fourth Amendment right against unreasonable searches and seizures. *See United States v. Souza*, 223 F.3d 1197, 1201

(10th Cir. 2000), *and United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016); *see also United States v. Smythe*, 84 F.3d 1240, 1242 (10th Cir. 1996).

Other courts have analyzed whether a private party acted as an agent for the Government where, as here, the defendant raises a due process argument based on the destruction of evidence. *United States v. Moler*, 650 F. App'x 161, 164 (4th Cir. 2016) (analyzing whether private party acted as an agent of the Government and violated Defendant's constitutional rights by destroying evidence); *see also United States v. Esquenazi*, 2011 WL 13079210, at *11 (S.D. Fla. Oct. 14, 2011) (analyzing whether bankruptcy trustee was agent of the government for purposes of destruction of evidence), *aff'd on other grounds*, 752 F.3d 912 (11th Cir. 2014); *see also United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006) (analyzing whether a private party was an agent of the Government and violated Defendant's Fifth Amendment right against self-incrimination), *citing United States v. Garlock*, 19 F.3d 441, 443 (8th Cir. 1994) ("We recognize that the government can exercise such control over a private actor that a "private" action can fairly be attributed to the government for purposes of the Fourth and Fifth Amendment.").

A.  <u>Agency Standard</u>.  "The burden of proving that a private party acted as an agent or instrument of the government is on the defendant. Whether an agency relationship exists is a fact-intensive inquiry that is guided by common law agency principles." *United States v. Ellyson*, 326 F.3d 522, 527 (4th Cir. 2003) (internal citations omitted), *cited in Ackerman*, 831 F.3d at 1301.

To determine whether a private party acts as an agent of the Government, the Tenth Circuit applies common law rules of agency as expressed in the Restatement (Second) of Agency. *United States v. Ackerman*, 831 F.3d 1292, 1301 (10th Cir. 2016); *see also United States v. Poe,* 556 F.3d 1113, 1123–24 (10th Cir. 2009). Relevant factors include:

7

> (1) the extent of the government's knowledge of, and participation in, the alleged agent's conduct; (2) the alleged agent's motivations; (3) the presence or absence of coercion as viewed from the suspect's perspective; and (4) other traditional indicia of agency, such as the parties' mutual manifestation of consent, either express or implied, to have the private party act on behalf of the government and the extent of control exercised by the government over the private party's actions.

*United States v. Alexander*, 447 F.3d 1290, 1295 (10th Cir. 2006) (footnotes omitted), *citing United States v. Souza*, 223 F.3d 1197, 1201 (10th Cir. 2000) (to determine whether private action should be considered Government action, court considers (1) "whether the government know or acquiesced in the intrusive conduct" and (2) "whether the party performing the search intended to assist law enforcement efforts or to further his own ends.")

  B. <u>Analysis – General Delegation</u>. Defendant argues that Greyhound was acting as an agent of the Government through a general delegation of authority. She points out that: (1) Agent Perry had free access to all Greyhound property, and (2) Greyhound employees acted as confidential informants for the DEA, exchanging information for money. Defendant argues that the "open access" showed a close working relationship between the DEA and Greyhound. Defendant also notes that, in the past, Agent Perry has paid Amtrack employees for information. *See, e.g., United States v. McKenzie*, 2011 WL 831218, at *5 (D.N.M. 2011).

  These facts, without more, are insufficient evidence to establish an agency relationship between either Greyhound or Ms. Gomez-Avila, and the DEA. There is no evidence that Agent Perry or any Government employee knew about the preservation request or directed Ms. Gomez-Avila to act. The Government did not fund any surveillance equipment in Albuquerque, nor did the DEA provide training or otherwise advise in Greyhound's video preservation or video recording. Although the DEA provided discs for Greyhound to use to respond to DEA's own subpoenas, there is no indication that this influenced how Greyhound responded to preservation requests or subpoenas from third parties. The DEA also played no role in formulating

Greyhound's security procedures. Instead, Greyhound *sua sponte* created its own procedures limiting law enforcement activity on its property. This evidences Greyhound's legitimate, independent motivation to ensure the safety and security of passengers and property, independent of any motivation to assist law enforcement. *See United States v. Smythe*, 84 F.3d 1240, 1243 (10th Cir. 1996) (private party had "legitimate, independent motivation" to search package which he thought was dangerous to passengers on bus), *cited in United States v. Souza*, 223 F.3d 1197, 1202 (10th Cir. 2000) (private parties may have legitimate reasons to search packages independent of any motivation to assist police). *See also United States v. Leffall*, 82 F.3d 343 (10th Cir. 1996) (a mere intent or purpose by private party to aid law enforcement does not make a person an instrument of the Government).

Finally, the Court is not convinced Agent Perry had free reign over the bus station. He was not allowed in the non-public areas alone, and none of the Greyhound managers knew or consented to employees acting as his confidential informants. At most, Greyhound and Agent Perry both acted to protect the bus station from criminal activity and harm. As the Seventh Circuit explained, "even if [a] private purpose should happen to coincide with the purposes of the government, this happy coincidence does not make a private actor an arm of the government." *United States v. Shahid*, 117 F.3d 322, 325–26 (7th Cir. 1997) (private actor may have independent motivation to "prevent criminal activity" or "incarcerate criminals").

For these reasons, and based on a totality of the circumstances, the Court concludes that Defendant has failed to establish that Greyhound acted as an agent of the DEA under a "general delegation of authority."

C. <u>Ms. Gomez-Avila was not an agent of the Government</u>. Ms. Gomez-Avila had access to the video recordings and was responsible for responding to video preservation

requests.[1] She was not a confidential informant for the DEA, had no knowledge of any confidential informant in Greyhound, and was not controlled, directed, or advised by the DEA on security operations, video recording, or video preservation. Therefore, the Court similarly concludes that she was not an agent of the Government and her failure to preserve the video tape cannot be attributed to the Government.

### III. Government's Privilege and In Camera Hearing.

Defendant subpoenaed several DEA agents to testify at the hearing. At the hearing, the Government asserted the informant and law enforcement privileges pursuant to a *Touhy* letter. The parties were in agreement that the relevant *Touhy* regulations have been satisfied. *See United States v. Rosen*, 520 F. Supp. 2d 802, 809–10 (E.D. Va. 2007). The next step is for the Court to determine whether the DEA agents could decline to testify based on the asserted privileges. *Id.*

At the hearing, the Court sustained the Government's objections to certain questions on the basis of the informant and law enforcement privileges, outside of an *in camera* hearing. For the reasons below, the Court declines to hold an *in camera* hearing.

A. Privileges. At the hearing, the Government asserted the informant and law enforcement privileges. "Due to the strong public interest in furthering effective law enforcement, the government enjoys a privilege to withhold from disclosure the identity of persons who furnish law enforcement officers with information on criminal acts." *United States v. Mendoza–Salgado,* 964 F.2d 993, 1000 (10th Cir. 1992). The privilege gives way when "the disclosure of an informer's identity ... is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." *Roviaro v. United States,* 353 U.S. 53, 60–61, 77

---

[1] An accountant, a third-party technician, and Ms. Gomez-Avila's supervisor had access to the video surveillance recordings. However, it appears that at the relevant times, Ms. Gomez-Avila was responsible for copying the recordings in response to preservation requests or subpoenas.

S.Ct. 623, 1 L.Ed.2d 639 (1957). The district court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense." *Roviaro,* 353 U.S. at 62, 77 S.Ct. 623. "Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informant's testimony, and other relevant factors." *United States v. Moralez*, 908 F.2d 565, 567 (10th Cir. 1990); *see also Mendoza–Salgado,* 964 F.2d at 1000. The defendant has the "burden of demonstrating a need for disclosure." *United States v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010).

A similar privilege applies to investigative techniques. The Law Enforcement privilege's purpose "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Myerson (In re Dep't of Investigation),* 856 F.2d 481, 484 (2d Cir.1988), *cited in In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). The party claiming the privilege bears the burden of showing the privilege applies. *In re United Telecommunications, Inc. Sec. Litig.,* 799 F.Supp. 1206, 1208 (D.D.C.1992), *cited in Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, 1995 WL 104835, at *1 (D. Kan. 1995).

The law enforcement "privilege may be overridden by the movant's substantial need for the documents and [his] inability to obtain their substantial equivalent by other means." *Carbajal v. Warner*, 2015 WL 1945129, at *3 (D. Colo. 2015), *quoting In re M & L Bus. Mach. Co., Inc.,* 161 B.R. 689, 693 (D.Colo.1993). The steps a defendant must take are as follows:

> Once a court has determined that the law enforcement privilege applies, we agree with the Seventh Circuit that "there ought to be a pretty strong presumption against lifting the privilege." *Dellwood Farms,* 128 F.3d at 1125.[22] To rebut that presumption, the party seeking disclosure must show (1) that its suit is "non-

frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that the information sought is "importan[t]" to the party's case. *See Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1343 (D.C.Cir.1984) (internal quotation marks omitted). With respect to the importance of the information sought, we hold that a "*compelling* need" is required. *Cf. Marriott Int'l Resorts,* 437 F.3d at 1307 (emphasis added) (discussing the deliberative process privilege). Parties seeking disclosure of information protected by the law enforcement privilege must make those three showings to overcome the strong presumption against disclosure.

*In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010).

Once the presumption against disclosure is overcome, a court must still balance "the public interest in nondisclosure… against the need of a particular litigant for access to the privileged information." *In re The City of New York*, 607 F.3d 923, 945 (2d Cir. 2010); *see also United States v. Van Horn*, 789 F.2d 1492, 1508 (11th Cir. 1986) (defendant must show compelling need for information, and that such compelling need outweighs the public's interest in nondisclosure).

      B.      <u>*In camera* hearing</u>.  The Tenth Circuit prefers district courts to hold an *in camera* hearing to determine whether an informant's testimony would be relevant or aid a Defendant's defense.  *Gaines v. Hess*, 662 F.2d 1364, 1369 (10th Cir. 1981).  An in camera hearing is not required in all circumstances.  An *in camera* hearing is required where the court would otherwise not able to determine whether an informant's testimony was essential to a fair trial or the informant's involvement or observation of the alleged crime.  *United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990).

However, an *in camera* hearing is not necessary if the Court already has the information necessary to determine if disclosure is required.  See *United States v. Tenorio-Angel*, 756 F.2d 1505, 1509 n.7 (11th Cir. 1985) ("Such an *in camera* hearing, however, is not always required, but depends upon whether the trial court has the information necessary to determine if

disclosure of the informant's identity is required without holding an *in camera* hearing."), *cited in United States v. Moralez*, 908 F.2d 565, 568 (10th Cir. 1990). This exception applies here.

Even if a Greyhound employee was a confidential informant and was paid to provide passenger information to the DEA, an agency relationship would still not be formed between the DEA and Greyhound. It is against Greyhound policy for an employee to provide information without permission of Greyhound. If there was a Greyhound employee acting as a confidential informant for the DEA, such informant was acting without the knowledge of, or permission, of Greyhound managers Mr. Streiff and Ms. Gomez-Avila. Moreover, no one involved with the video recording system or managing security operations was acting as a confidential informant for the DEA. Any testimony about confidential informants or investigative techniques involving confidential informants would not change the above agency analysis. Because disclosure of the privileged information is not important to the Defendant's case, the Court concludes that Defendant's need for the privileged information does not outweigh the Government's interest in nondisclosure. Therefore, the Court concludes that an *in camera* hearing is not necessary.

## CONCLUSION

The Court concludes there is no agency relationship between either Greyhound or Ms. Gomez-Avila and the Government. Moreover, an *in camera* hearing is not necessary here, because disclosure of privileged information regarding confidential informants and investigative techniques would not change the above agency analysis.

**THEREFORE, IT IS ORDERED** that Defendant's Motions **(Docs. 25** and **34)** are **DENIED**.

_____
CHIEF UNITED STATES DISTRICT JUDGE