IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>      v.<br><br>DULCE ISABEL RAMOS-BURCIAGA,<br><br>                Defendant. | Case No. 17-CR-2236 WJ |

**REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS**

Dulce Isabel Ramos-Burciaga, through counsel, Alejandro Fernandez, Assistant Federal Defender, respectfully replies to the government's response to her motion to suppress.

1.    At the outset, it must be noted that the government has been given many opportunities to provide an alternative explanation for Ms. Ramos-Burciaga's search and seizure. Rather than provide one, it has clung exclusively to a theory of consent. Because Ms. Ramos-Burciaga very clearly did not give valid consent, the evidence against her must be suppressed.

**The government's recitation of facts and the transcript it submitted of the encounter between Ms. Ramos-Burciaga and Agent Perry, (Doc. 64-1), omit crucial details.**

2.  The most telling aspects of the government's response, (Doc. 64), are the facts that it chose to omit. A critical turning point in the exchange between Ms. Ramos-Burciaga and Agent Perry was when Ms. Ramos-Burciaga asked Agent Perry why he chose to stop her. (Audio Recording 00:59) This moment was highlighted in her initial pleading, (Doc. 58 at 3), and its significance was argued at some length (Doc. 58 at 14-16). Rather than contend with that fact, the government makes only off-handed mention of it in its argument section. (Doc. 64 at 12)

3.  Another crucial omission from the government's summary of facts was Agent Perry's acknowledgment that he had not received consent from Ms. Ramos-Burciaga prior to his search. Agent Perry asked, "*since you are not answering the question*, can you just open up and show me the contents then, without me searching it?" (Audio Recording 4:25) (emphasis added) In context, the phrase "since you are not answering the question" is the functional equivalent of the words "since you are not giving me consent." Agent Perry thus indicated that he did not get Ms. Ramos-Burciaga's consent. Agent Perry resolves this issue by suggesting that he did not conduct a search. (Doc. 31 at 16; Doc. 58 at 5-6)

2

The government does not do this. The government claims that the search was consensual, thereby disregarding some plain facts.

### A. Ms. Ramos-Burciaga asked Agent Perry why he stopped her.

4. The transcript that the government submitted to this Court, elided the critical words by Ms. Ramos-Burciaga. Where Ms. Ramos-Burciaga said "that you stopped me," the government simply put "(UI)", indicating, "unintelligible." (Doc. 64-1 at 2). Thus, rather than concede that Ms. Ramos-Burciaga asked why she was stopped and argue why its position was nonetheless valid, or argue an alternative version of the words, it simply dodged the issue.

5. The government claimed that it is "unclear" that Ms. Ramos-Burciaga asked why she was stopped. (Doc. 64 at 12) The government suggests that only the phrase "what happened" can be clearly heard. Id. The defense has now submitted the original recording to this Court so that the record is abundantly clear. (Doc. 65) While the words after the phrase "what happened" are more difficult to discern because of ambient noise, there is no doubt that there are additional words following the phrase "what happened." The government's argument that this Court should consider only the phrase "what happened" has no justification.

6. The government thereby refuses to engage the admittedly difficult task of discerning the full recording. It wishes instead to disregard Ms. Ramos-

Burciaga's words and ignore the obvious context clues.  Agent Perry's response, "Yeah, we just check the station here.  It's just for security, speaking to all the passengers," (Doc. 64 at 13), is a reasonable response to, "what happened that you stopped me?"  The government offers no alternative interpretation of Ms. Ramos-Burciaga's question.  Because it ignores rather than explains Ms. Ramos-Burciaga's words, its insistence that "SA Perry did not confirm that she had been stopped," is more akin to foot stomping than reasoned argument.  (Doc. 64 at 12)

7. Skirting this problem, the government employs some hand waiving.  Its first phrase of section "IV" highlights this technique.  The government remarks "[t]he Defendant was not seized because the interaction was a consensual encounter."  (Doc. 64 at 11)  It then argued, "[c]onsensual encounters are not seizures within the meaning of the Forth Amendment and need not be supported by suspicion of criminal wrongdoing."  Id.  As general principles of law, those statements may well be true.  In this case, however, whether consensual encounters constitute seizures has no bearing. The defense has never argued that consensual encounters are seizures.  The defense has put forth evidence that Ms. Ramos-Burciaga was seized, and therefore, the encounter was not consensual.

8. The government sows distractions throughout its writing.  In several instances it reviews at length the various ways in which a seizure might occur and

4

concludes Ms. Ramos-Burciaga was not seized. (Doc. 64 at 3-4,11-14) The government's arguments, however, never reach the heart of the matter. While many factors traditionally contribute to an analysis concerning the voluntariness of a police encounter, here, whether Ms. Ramos-Burciaga was unlawfully seized at the point that she asked why she was stopped is a threshold matter. All other indicia of a consensual encounter might become relevant after that issue is resolved, but remain largely beside the point until then.

9. By not substantively addressing the issue of the stop, the government missed its opportunity to argue why that question—"what happened that you stopped me?"—does not convert a supposed consensual encounter into an unlawful seizure. Not a single case cited by the government indicates that an objective and reasonable person would imagine herself free to leave after asking such a question, and receiving an official response.

10. This threshold issue should be resolved in Ms. Ramos-Burciaga's favor. Ms. Ramos-Burciaga asked why she was stopped, and Agent Perry did not dispel the notion that she was in fact stopped, but instead confirmed her belief by offering her a reason. Whatever pretense of a consensual encounter existed before that question was thereby destroyed. A reasonable, objective, innocent person could not imagine she was free to discontinue that police encounter. (Doc 64 at

12) Without a reason to justify the stop, the continuing encounter was not consensual, and whatever alleged consent was later obtained to search Ms. Ramos-Burciaga's bags was invalid.

### B. Ms. Ramos-Burciaga did not give consent to search her bag.

11. The government acknowledges that Ms. Ramos-Burciaga asked "why" when asked for consent to search her smaller hand-bag. It failed to acknowledge, however, that Ms. Ramos-Burciaga asked "why" a second time after Agent Perry persisted in his request. Further, as noted above, the government did not include in its statement of facts that Agent Perry ultimately abandoned his request for permission and acknowledged that Ms. Ramos-Burciaga was not "answering the question."

12. The express consent alleged by the government is the series of "yes" and "yeah, sure" answers Ms. Ramos-Burciaga gave as she was instructed by Agent Perry how to manipulate the contents of her bag so that he could see the drugs. (Doc. 64 at 5) These one-word answers came on the heels of Ms. Ramos-Burciaga repeatedly asking "why" and Agent Perry's acknowledgment that she was not answering his request for consent. The whole charade whereby Agent Perry directed the "non-search" was predicated on the idea that he did not get

consent. The government never explains how this Court can move past this constitutional hurdle.

13. The government concedes that the test for valid consent is a two part inquiry that begins with "clear and positive testimony that consent was unequivocal and specific and freely given." (Doc. 64 at 6) Neither Ms. Ramos-Burciaga's words nor actions can be construed as unequivocal, specifically granting consent, or freely given. The government's suggestion that Ms. Ramos-Burciaga "did not equivocate, hesitate or even remain silent," is absurd. (Doc. 64 at 7) If Ramos-Burciaga did not hesitate or equivocate, Agent Perry would not have had to ask repeatedly for consent, or change his tact and pretend he was not searching her bag, or continually direct her exactly how to move items for the line of site that he wanted.

14. Finally, the government's understanding of the "reasonable officer" standard as it relates to consent is wrong. The government argues that Agent Perry's subjective belief that he did not have consent is of no moment because the standard is an objective one. (Doc. 64 at 6) First, that unduly denigrates Agent Perry's perception of the situation. Second, the defense does not argue that the test is a subjective one, but neither does it believe, as the government might, that Agent Perry is not a "reasonable officer" in this context. The defense believes that Agent

Perry correctly reasoned that he did not have Ms. Ramos-Burciaga's consent to search her bag. The defense puts forward Agent Perry's belief as a very good indication of a reasonable officer's belief in his specific context.

15. Moreover, the reasonable officer standard is one that courts apply when the officer *believes* he has consent. In those situations, the Court must ask whether the officer's belief that he had consent was reasonable. The standard provides a judicial check on officers who construe consent where perhaps there is no consent. To ask whether Agent Perry's belief that he *did not* have consent was reasonable is a strange inversion, and not a test that any court appears to have ever applied. Certainly, each of the cases the government cites applies the reasonable officer standard in situations where the officer expressed a subjective belief that he obtained consent. (Doc. 64 at 6) (See, United States v. Guerrero, 472 F.3d 784, 789 (10th Cir. 207); United States v. Jones, 701 F.3d 1300, 1306 (10th Cir. 2012); United States v. Patten, 183 F.3d 1190, 1194-95 (10th Cir. 1999)).

## Conclusion

16. Ms. Ramos-Burciaga was unlawfully seized, and subsequently asked for consent to search her belongings. Ms. Ramos-Burciaga declined to give consent. Neither the encounter as a whole, nor the search was consensual. Ms. Ramos-Burciaga's responses were equivocal and not freely given. Even Agent

8

Perry did not imagine that he had obtained consent prior to searching her bag. The government conceded the Miranda violation (Doc. 64 at 14), and so it was not discussed here. For the reasons stated here, and those in her motion to suppress, the alleged contraband and statements must be suppressed.

**WHEREFORE**, Ms. Ramos-Burciaga respectfully requests that this Court suppress all contraband and statements obtained as a result of her unlawful search and seizure, as well as statements obtained subsequent to the conceded Miranda violation.

Respectfully Submitted,

*[Electronically Filed]*
ALEJANDRO B. FERNANDEZ
Counsel for Ms. Ramos-Burciaga
Federal Public Defender
111 Lomas Blvd. NW, Suite 501
Albuquerque, New Mexico 87102
(505) 346-2489
Alejandro_fernandez@fd.org

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY THAT on May 17, 2018, I filed the foregoing electronically through the CM/ECF system, which caused AUSA Rumaldo Armijo to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

*[Electronically Filed]*