IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                                                                    Case No. 1:17-cr-002236 WJ

DULCE ISABEL RAMOS-BURCIAGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE AND STATEMENTS

THIS MATTER comes before the Court on Defendant's Motion to Suppress Tangible Evidence and Statements, filed April 2, 2018 **(Doc. 58).** Having considered the parties' written and oral arguments, evidence, and applicable law, the Court finds that Defendant's motion is largely not well-taken and, therefore, is **DENIED IN PART.** However, certain statements are in violation of *Miranda* violations, and excluded as agreed by the Government.

### BACKGROUND[1]

Defendant challenges the validity of an allegedly consensual encounter and search, and seeks to suppress heroin found in her backpack. On August 4, 2017, Defendant was arrested by DEA Special Agent Jarrell Perry, after exiting a Greyhound bus at the downtown Albuquerque Greyhound station. She was indicted with

> unlawfully, knowingly, and intentionally possess[ing] with intent to distribute a controlled substance, 1 kilogram and more of a mixture and substance containing a detectable amount of heroin. In violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A).

---

[1] To avoid repetition, the majority of the findings of fact are located in the discussion section below. Both the audio recording and transcript were admitted into evidence, but the audio recording controls.

**Doc. 12.** Agent Perry works drug interdiction at the Albuquerque Greyhound and Amtrak terminals. He has been a DEA Agent for approximately 20 years, primarily at those terminals, investigating approximately 1,500 narcotics cases.

Defendant arrived in Albuquerque via a Greyhound bus at 9:35 p.m. on August 4, 2017. The bus was scheduled to depart at 11:15 p.m. Two other DEA agents were working with Agent Perry in the station that night, although only one of them was present during the encounter with Defendant.

Agent Perry observed defendant exit the bus, grab her luggage, and enter the station. Agent Perry observed Defendant seated at a game machine in the station, and approached her. The station was open to the public, and "a lot" of people were present. Agent Perry told Defendant: "I'm a police officer and we check the station here for security. May I speak to you for a moment?" Defendant consented and represented she spoke English. Agent Perry again asked if he could speak to her, and she affirmed. The two next engaged in casual conversation; Agent Perry asked where she was coming from, and where she was going. Agent Perry was generally casual, calm, and respectful. He asked for her ID and ticket, and returned them to her.

Defendant asked "what happened" and Agent Perry responded: "It's just for security here at the station because Amtrak, ur, Greyhound doesn't really have any security so we come down here and speak with passengers for security reasons." She responded "okay." The parties continued in casual conversation. Agent Perry asked where she was from, and how long she was going to be in Denver.

Agent Perry again stated "yeah, we just check the station here. It's just for security, speaking to all the passengers." Defendant asked "It's like vi-vi-violence here or something?" Agent Perry responded "well, no, it's just that Greyhound… really doesn't have any security

when you board…. there's not really any security on the busses so basically you can carry whatever you want on the bus. Weapons, illegal narcotics, anything illegal. Weapons, hopefully not explosives but you can… anything illegal." Agent Perry then asked if she had been to Denver before, and how long ago.

Agent Perry asked if she had any luggage with her. Defendant had two bags: a suitcase and a backpack. Defendant first showed agent Perry her black suitcase, and they moved over to a row of seats by a pillar. Defendant gave consent for Agent Perry to search her suitcase, which appears to be undisputed. While Agent Perry was searching the suitcase, Agent Pantoja came over and introduced himself, and talked with her. Based on the testimony and admitted pictures of the area, it does not appear that Defendant's ability to leave was blocked.

After searching her suitcase, Agent Perry asked for permission to search her backpack. Defendant did not give an answer, but asked "why?" She later asked "What happened? I'm nervous now." Agent Perry responded "oh, there's no reason to be nervous. As I explained to you over there, it's just for security at the bus station. Is that a purse or backpack?" Agent Perry asked for permission to search her backpack a second time, and Defendant declined to answer, asking "but why?" Agent Perry said it was "just to make sure you don't have anything illegal inside ma'am. Let me ask you this, since you're not answering the question, can you just open up, show me the contents then… without me searchin' it? That okay with you?" Defendant responded "yeah, of course". Defendant took the backpack off and placed it on her lap while sitting. Agent Perry did not put his hands in the bag, but instead Defendant moved the contents around at his request, after she expressly agreed to do so.

The recorded encounter lasted for approximately five minutes. After seeing the alleged heroin in her backpack in plain view, he arrested her and brought her back to the local DEA

office. The DEA questioned Defendant and read her a *Miranda* advisement. She then asserted her right to remain silent. The parties appear to agree that one answer given by Defendant prior to the *Miranda* advisement should be excluded.

On August 6, 2018, the Court held an evidentiary hearing, and heard testimony from Agent Perry, Agent Pantoja, and the Defendant. During the hearing, the Court heard the audio recording of the encounter. The parties requested written closing, and this matter was fully briefed and ready for decision on September 7, 2018.

### C. Agent Perry's Credibility.

Initially, Defendant attacks Agent Perry's credibility. At the hearing, Agent Perry testified that prior to encountering Defendant, he received a copy of the passenger list from a confidential source. Defendant asserts that Agent Perry made no mention of a confidential source in prior pleadings, reports, or testimony. In fact, a confidential source was discussed at a previous hearing in this case, and based on the Government's vigorous assertion of the informant privilege, it was assumed that a confidential source was used. At that prior hearing, Agent Perry was prohibited from discussing the informant based on a *Touhy* letter, and the Court ultimately determined that it did not need to rule on whether the confidential source should be disclosed, because it was not relevant to the motion at issue. **Doc. 66.** Both parties are aware that Agent Perry operates using a confidential source that provides him with a passenger manifest list. It is unclear why that passenger manifest list was not provided to defense counsel or brought to the Court's attention. However, it appears that this oversight does not fall on Agent Perry, who was forthright about its existence when asked and allowed to answer at the hearing.[2] Therefore, the

---

[2] The passenger list was the subject of a motion to compel discovery. **Doc. 36.** The Government represented that all information requested in the motion to compel had been turned over or did not exist, therefore the Court denied the motion. However, the Court reminded the Government of their duty to inquire into its existence and bring that

Court concludes that it does not affect the credibility of his testimony on the narrow issues in the motion to suppress.

## DISCUSSION

Defendant argues that her Fourth Amendment rights were violated, because Agent Perry seized her early on in the encounter, and the search of her backpack was otherwise not consensual. She seeks suppression of the heroin found in her backpack.

"The Fourth Amendment typically requires that law enforcement agents obtain a warrant before conducting a search. A warrant is not required, however, when the defendant consents to the search." *United States v. Jackson*, 381 F.3d 984, 988 (10th Cir. 2004) (internal citation omitted); *see also United States v. Jones*, 701 F.3d 1300, 1317 (10th Cir. 2012). "Subject to a few exceptions, evidence obtained in violation of the Fourth Amendment will be suppressed under the exclusionary rule." *United States v. Christy,* 739 F.3d 534, 540 (10th Cir. 2014). The exclusionary rule encompasses both "evidence obtained during the illegal police conduct" and "any other evidence deemed to be 'fruit of the poisonous tree.'" *United States v. Olivares–Rangel,* 458 F.3d 1104, 1108 (10th Cir. 2006).

Moreover, no seizure (and no violation of the Fourth Amendment) "occurs when police ask questions of an individual, ask to examine the individual's identification, and request consent to search his or her luggage—so long as the officers do not convey a message that compliance with their requests is required." *Florida v. Bostick*, 501 U.S. 429, 437, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991).

For consent to be valid, the Government must show that (1) there is clear and positive testimony that consent was unequivocal and specific and freely given, and that (2) "consent was

---

information to the Court's attention, so that it can rule whether that discovery is exculpatory or material. *See* **Doc. 57**.

given without duress or coercion, express or implied." *United States v. Guerrero*, 472 F.3d 784, 790 (10th Cir. 2007); *see also United States v. Jones*, 710 F.3d 1300, 1318 (10th Cir. 2012). The Government bears "the burden of proving that consent is given freely and voluntarily." *United States v. Jones*, 701 F.3d 1300, 1318 (10th Cir. 2012) (citation omitted). Whether consent was given voluntarily without duress or coercion "is a factual issue, determined through the totality of the circumstances." *United States v. Guerrero*, 472 F.3d 784, 789 (10th Cir. 2007). Since consent for both the encounter and search are substantially similar, the Court will analyze them together, with differences noted below.

I. **First prong: clear and unequivocal consent.**

    A. **Agent Perry searched Defendant's backpack**.

Initially, Agent Perry understood that he did not search her backpack, and therefore did not receive consent. His subjective understanding of whether he performed a search is not determinative. The Court agrees with Defendant's well-reasoned analysis that Agent Perry searched Defendant's backpack when he asked her to open it up and move items around. The Government appears to agree.

However, the Court reject's Defendant's argument that Agent Perry did not have consent solely on the basis that he subjectively believed he did not have consent to search Defendant's backpack. *United States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012). The test is an objective one, and Agent Perry's subjective belief is not controlling. *Id.* (action by defendant "could have been reasonably interpreted" by officer as communicating consent). Although Agent Perry believed he did not receive consent to search her backpack, he also believed he did not search her backpack. However, he testified that he believed that every action he took in the encounter was consensual.

6

B.      **Defendant consented to both the encounter and search.**

Defendant gave clear, unequivocal consent both to the encounter and the search, satisfying the first prong above. Initially, Agent Perry explained "I'm a police officer… and we check the station here for security. May I speak to you for a moment?" Defendant responded "Yeah, sure." Therefore, Defendant gave Agent Perry unequivocal consent to speak to her. At no time did she revoke her consent to the encounter or indicate that she wished to terminate the interaction.[3]

Moreover, at the outset of the search, Agent Perry received clear, unequivocal consent from Defendant to search her backpack. He also received consent at each stage to continue the search. When Agent Perry asked for permission to search the backpack the first two times, Defendant asked "why" twice. Thereafter, Agent Perry did not search her bag himself. Rather, Agent Perry then asked whether she would open the bag and move items around. She responded "yeah, of course" to his request. When he requested that she move certain items in the bag, she answered again in the affirmative. Consent may validly follow a previous refusal. *United States v. Guerrero*, 472 F.3d 784, 789–90 (10th Cir. 2007), *citing United States v. Flores*, 48 F.4d 467, 468-69 (10th Cir. 1995); *United States v. Zubia-Melendez*, 263 F.3d 1155, 1163 (10th Cir. 2001) ("The fact that Appellant initially told [officer] he could not search the car does not, however, render his subsequent consent involuntary especially because Appellant's consent appears to have come without hesitation when he was asked a second time for permission to search the vehicle."). Here, Defendant clearly preferred to open the backpack up herself and gave consent without hesitation.

Moreover, Defendant's actions support her verbal expression of consent. She opened her backpack and moved items around at his request. *United States v. Guerrero*, 472 F.3d 784, 789–

---

[3] As explained below, Defendant was not seized when she asked Agent Perry "what happened."

90 (10th Cir. 2007) ("Consent may [] be granted through gestures or other indications of acquiescence, so long as they are sufficiently comprehensible to a reasonable officer."). A reasonable officer would have construed her doing so as an expression of consent. *See United States v. Jones*, 701 F.3d 1300, 1321 (10th Cir. 2012) (collecting cases that hold that conduct, such as opening a bag in response to an officer's request to do so, was consensual), *citing United States v. Patten,* 183 F.3d 1190, 1192–95 (10th Cir.1999) (holding that consent to search was valid where the officer asked the defendant to open his suitcase and in response the defendant did so).

## II. Second Prong: whether consent was coerced.

### a. Factors.

Determining whether consent was coerced "turns on whether a reasonable person would believe he was free to leave or to deny the officer's request to search." *United States v. Guerrero*, 472 F.3d 784, 790 (10th Cir. 2007). The Court considers the following non-exclusive factors:

> the threatening presence of several officers; the brandishing of a weapon by an officer; some physical touching by an officer; use of aggressive language or tone of voice indicating that compliance with an officer's request is compulsory; prolonged retention of a person's personal effects such as identification and plane or bus tickets; a request to accompany the officer to the station; interaction in a nonpublic place or a small, enclosed place; and absence of other members of the public.

*Id.*; *United States v. Jones*, 701 F.3d 1300 (10th Cir. 2012); *see also United States v. Thompson*, 546 F.3d 1223, 1226 (10th Cir. 2008) (additional factors); *United States v. Harrison*, 639 F.3d 1273, 1279 (10th Cir. 2011) (additional factors). Additional factors include whether a defendant is told she has the right to refuse, the defendant's education and language ability, and the nature of the questioning. This determination is based on a totality of the circumstances, and no one factor is dispositive. *Thompson*, 546 F.3d at 1226.

**B.     Consent to encounter and search was voluntary and free of coercion.**

1.  <u>Analysis of Factors</u>.  Here, the majority of the factors weigh toward finding that the search and encounter were voluntary and not coerced.  The encounter was in the bus station in a public waiting area, which is an open space.  Defendant testified there were "a lot" of people present at the time of the encounter and search.  It appears that only two agents were present during the interaction with Defendant, although a third agent was somewhere in the station.  The agents did not touch or restrain defendant until they saw the contraband and arrested her.  They were in plain clothes and did not display their weapons.  Agent Perry displayed his badge at the beginning of the encounter.  Upon reviewing the audio recording, the Court finds that Agent Perry's tone was calm and respectful, and did not imply that she must comply with his requests.

Moreover, the nature of the questioning and search did not imply that she had no right to refuse the search.  Much of the conversation was casual.  Agent Perry requested to see Defendant's identification and ticket, but they were returned immediately.  As explained below, Defendant was not detained at the time she consented to the search.  Agent Perry did not reach in to her backpack until he saw the heroin in plain view.[4]

The Court finds that the questioning was not "accusatory, persistent, and intrusive." *United States v. Little*, 60 F.3d 708, 712 (10th Cir. 1995).  Agent Perry clearly did not accuse Defendant of anything, and the questioning was casual.  Although Defendant was clearly nervous, the Court finds that a reasonable person would not have been.

Moreover, Defendant speaks Spanish and some English.  Defendant's responses ("Yeah, of course") and actions indicate that she understood what she was being asked.  Therefore, it appears that Defendant's consent was freely and intelligently given.  *See United States v. Zubia-*

---

[4] Assuming the encounter and search were consensual, Defendant does not contest that the heroin was in plain view.

*Melendez*, 263 F.3d 1155, 1163 (10th Cir. 2001) (defendant had sufficient familiarity with the English language to understand and respond to officer's request), *citing United States v. Corral*, 899 F.2d 991, 994 (10th Cir. 1990) (holding that defendant with limited knowledge of English voluntarily consented because he understood the officer's questions, answered questions in English and demonstrated an overall working knowledge of English).

The parties spent much time identifying the exact positions of the Defendant and the agents in the station. At the time of the search, Defendant was seated at a bench, and Agent Pantoja was behind the bench. Reviewing the exhibits and the testimony, the Court concludes that neither agent blocked her ability to leave, and they were not in threatening positions.

Agent Perry did not tell Defendant that she was free to terminate the encounter or refuse consent. This weighs toward finding the search was not consensual, but is not dispositive. *United States v. Thompson*, 546 F.3d 1223, 1228 (10th Cir. 2008) (failure to advise defendant she was free to refuse consent "should carry little weight" in the analysis).

Defendant asserts that the presence of multiple agents was coercive. The presence of two officers is insufficient, by itself, to establish a "threatening presence." *United States v. Bernard*, 680 F.3d 1206, 1211 (10th Cir. 2012); *see also United States v. Drayton*, 536 U.S. 194 (2002) (three officers present was not coercive).

She also argues that their body language and gestures implied she had to comply with them. Weighing the testimony of Agent Perry and the Defendant, along with the audio recording, the Court finds that the Agent Perry did not use any threatening gestures or intimidating body language. Defendant testified that Agent Perry gave hand gestures or used body language that indicated that his requests were really demands. The Court understands that Defendant was nervous during the encounter, but finds that a reasonable, innocent person would

not have interpreted Agent Perry's requests as demands. Defendant's allegations about the "demanding" gestures or body language conflicts with Agent Perry's demeanor in the audio recording, which shows Agent Perry to be calm and respectful. For example, Defendant told Agent Perry she was nervous, and Agent Perry said "oh, there's no reason to be nervous. As I explained to you over there, it's just for security at the bus station." Defendant was in an open public space, and the agents did not position themselves in a manner that was imposing or threatening.

Defendant asserts that she asked if she could leave, but that is not reflected in the audio recording and not what she testified at the hearing. Instead, she stated that she "wanted" to ask him if she could go, but felt that she couldn't. **Doc. 80 at 53.** However, Defendant clearly felt comfortable refusing Agent Perry's requests, as she twice declined to consent to his search of the backpack.

Agent Perry's repeated requests for consent to search Defendant's backpack were not "orders", and under these circumstances, did not coerce Defendant's consent. Defendant did not merely acquiesce to his third request for consent to search her backpack. Rather, she did not answer his first two requests to search her backpack. On his third request, he asked if *she* would open up the backpack herself and show him the contents. Defendant consented to this narrowed search, saying "yeah, of course." She subsequently consented to his request for her to take items out herself so he could see the bottom, saying "yeah, sure." Agent Perry was free to renew his request for permission to search, and his alternative request for her to open her backpack did not become coercive. *Guerrero*, 472 F.3d 784, 789–90 (10th Cir. 2007), *citing United States v. Flores*, 48 F.3d 467, 468-69 (10th Cir. 1995). Defendant did not object during the search itself. *Guerrero*, 472 F.3d at 790.

2. <u>Any deception was not coercive</u>. Defendant argues Agent Perry was deceptive and was not there for "security" as he told her, but was there to find Defendant based on his prior investigation of the passenger list. Therefore, she argues that this deception made the encounter involuntary.

Deception may be considered under the totality of the circumstances in determining whether consent was gained by coercion. *United States v. Harrison*, 639 F.3d 1273, 1278–79 (10th Cir. 2011). "However, although it is a relevant consideration in the consent calculus, the use of deception is not categorically unlawful." *United States v. Jones*, 701 F.3d 1300, 1319 n.9 (10th Cir. 2012). Deceit or trickery is prohibited where it implies "an individual has no ability to refuse consent." *Harrison*, 639 F.3d at 1280. Agent Perry explained that he was there for security, looking for contraband, including narcotics. Agent Perry was consistent through the encounter that he was asking for consent to search whether she had anything illegal. In other words, Agent Perry came out and stated his intent that he was looking for drugs. This is not deceitful.

Defendant argues Agent Perry's prior review of a passenger list he received from a confidential source made the interaction nonconsensual, because he was in fact there to target Defendant, and not there for mere "security reasons" as he professed. Agent Perry testified that he received a passenger list from a confidential informant, and reviewed certain information therein, such as passengers' originations and destinations, whether they were traveling with anyone, and whether they checked any luggage. Thus, Agent Perry would know if Defendant lied about these matters.

However, Agent Perry did not "target" Defendant and did not know who she was before he approached her. In fact, he told her he was there for security, and received consent to speak

with her, prior to learning her name. He did not say anything that was so deceptive as to render her consent coerced. As explained above, he told her he was there for security and searching for narcotics. This was truthful. He did not even imply that he suspected she had drugs on her. *See, e.g.*, *Jones*, 701 F.3d at 1319 n.9.

An officer's unexpressed suspicion of law breaking does not necessarily make any interaction nonconsensual. *See Jones*, 701 F.3d at 1319 n.9 (officer's statement that he was there to see defendant's marijuana plants, when officer did not know whether defendant actually had marijuana plants, was not so deceitful as to render consent involuntary).

Rather, the issue of whether the officers had a confidential source (and passenger manifest) is generally not relevant to whether the encounter and search were consensual. *United States v. McKenzie*, No. 08-cr-1669 JB, 2011 WL 831218, at *11 (D.N.M. Feb. 10, 2011) (Browning, J.) (confidential source of passenger list was not relevant to whether search was consensual under Fourth Amendment, and it was irrelevant in consensual encounter whether officers had any prior belief that defendant was transporting contraband).

Finally, Defendant asserts Agent Perry created the impression that she would be in physical danger if she refuses consent to search. Deception that implies that a defendant is in imminent danger is indeed coercive. *See Harrison,* 639 F.3d at 1279. Rather, he stated that he there for security, and merely listed the types of things he searched for, which included explosives and narcotics. The Court finds that Agent Perry was not implying that she was in danger if she refused the search, but merely explained why he was providing security at the station. *See, e.g., Harrison*, 639 F.3d at 1280 (ATF falsely claiming there was an explosive in defendant's apartment was coercive). Moreover, when Defendant asked if Agent Perry was

13

there because there was violence in the station, he said "no", disabusing her of the notion that she was in danger.

Even considering this "deception", viewing the totality of the circumstances, the Court concludes that this matter was not so tainted by deceit or trickery as to render the encounter or search nonconsensual or involuntary.

        3.        <u>Search was within scope of her consent</u>. Defendant argues that Agent Perry exceeded the scope of her consent by asking her to move items in her purse. Generally, the scope of consent to search a bag includes all the contents of the bag, unless otherwise limited. *See United States v. Jackson*, 381 F.3d 984, 988 (10th Cir. 2004). "The scope of a search is generally defined by its expressed object and is limited by the breadth of the consent given." *United States v. Anderson*, 114 F.3d 1059, 1065 (10th Cir. 1997) (internal quotation marks omitted). District courts apply an objective reasonableness test to measure the scope of consent. *Id.* "[A] defendant's failure to limit the scope of a general authorization to search, and failure to object when the search exceeds what he later claims was a more limited consent, is an indication the search was within the scope of consent." *United States v. Gordon*, 173 F.3d 761, 766 (10th Cir. 1999).

Agent Perry asked "can you just open up, show me the contents then… without me searchin' it? That okay with you?" Defendant responded "Yeah, of course." The scope of consent here included the contents of the backpack, and did not limit which contents. Moreover, he subsequently asked whether she could take items out so he could see the bottom. She responded the first time "Yeah, sure." Agent Perry asked again, and she moved the items.

Neither Agent Perry nor Defendant limited the scope of consent, beyond specifying that Defendant (and not Agent Perry) would open the bag and move contents around. The undisputed

testimony showed that Agent Perry did not open up the backpack, or put his hands inside the bag, until after he saw the contraband. Therefore, the Court concludes that Agent Perry did not exceed the scope of her consent.

### C. Defendant was not seized when she asked "What happened?"

Defendant argues that she was unlawfully seized at the beginning of the encounter, alleging she asked if she was stopped and Agent Perry failed to clarify that she was free to go.

"As part of a consensual encounter, an officer may approach an individual, ask a few questions, ask to examine the individual's identification, and even ask for consent to search as long as the police do not convey a message that compliance with their requests is required." *United States v. Madden*, 682 F.3d 920, 925 (10th Cir. 2012) (internal quotation marks omitted), *citing Florida v. Bostick,* 501 U.S. 429, 434, 435, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that [ ]he was not free to leave." *United States v. Fox*, 600 F.3d 1253, 1258 (10th Cir. 2010) (internal quotation marks omitted). "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." *Bostick*, 501 U.S. at 439.

Whether an encounter was consensual or a seizure under the Fourth Amendment involves a similar analysis as above, and involves similar factors and facts. *See United States v. Valdez-Perea*, 597 F. App'x 1000, 1005 (10th Cir. 2015), *citing United States v. Drayton,* 536 U.S. 194, 206 (2002) ("[i]n circumstances such as these, where the question of voluntariness pervades both the search and seizure inquiries, the respective analyses turn on very similar facts.").

Defendant asserts that she was seized, because she asked Agent Perry "what happened that I was stopped," and he responded that "It's just for security". The audio recording of what Defendant said is not clear, and it is difficult to discern what Defendant said after "what happened." Based on context, it is likely that she said something in addition to "what happened". However, based on the audio recording played at the hearing, the Court can only find that Defendant said, at minimum, "what happened." Beyond that, there is only conflicting testimony from Agent Perry and Defendant. Agent Perry does not remember Defendant asking if she was stopped, and he asserts he reviewed the recording many times.

Even if Defendant asked why she was stopped, under the totality of the circumstances, Agent Perry's response would not have made a reasonable person believe they were not free to leave. *United States v. Laboy*, 979 F.2d 795, 798 (10th Cir. 1992) ("As long as a reasonable innocent person, as opposed to a person knowingly carrying contraband, would feel free to leave, such encounters are consensual and need not be supported by reasonable suspicion of criminal activity."), *citing Bostick*, 111 S.Ct. at 2386. Agent Perry initiated the encounter by asking "…we check the station here for security. May I speak to you for a moment?" That does not convey that she was seized, and he did not do anything else to convey she was not free to leave.

Moreover, Agent Perry's full response to her question was as follows: "It's just for security here at the station because Amtrak, ur, Greyhound doesn't really have any security so we come down here and speak with passengers for security reasons." Defendant responded "Okay", and they continued in casual conversation. Agent Perry did not say she was stopped, and clarified that he is there to speak with passengers. Subsequently, Agent Perry again reiterated that he was just there for security to speak with passengers. **Ex. 3 at 1:31**.

Therefore, the Court finds that Agent Perry's response clarified that she was not stopped. Agent Perry did not convey or imply that she was not free to go. Rather, responding that he was there for security and to speak with her was a simple statement of fact and does not imply that she must comply with him. *See, e.g., United States v. Jimenez*, 2018 WL 770385, at *5 (D.N.M. 2018) (Herrera, J.) (Agent Perry saying he was there for "security" did not improperly convey to defendant that he was not free to go or decline the encounter).

Moreover, Defendant felt free to refuse the search of her backpack twice, contradicting her claim that she felt like she could not terminate the encounter. As above, considering the totality of the circumstances, the Court finds that the encounter was consensual and a reasonable person would feel free to leave and terminate the encounter. Therefore, Defendant was not seized.

### III. *Miranda* Violation at DEA Office.

Although unaddressed at the hearing, Defendant sought to exclude certain statements she made after she was arrested, but before she was read her *Miranda* rights, at the DEA station. Specifically, she sought to exclude her statement that she "more or less" understood Agent Perry when he requested to search her bags. Defendant did not identify any other statement that should be excluded, and upon reviewing the transcript, the Court cannot find any. The Government does not contest the exclusion of this statement. Therefore, Defendant's statement that she "more or less" understood Agent Perry during the encounter is excluded. However, the Court does not rule on whether the Government may use this statement for impeachment purposes.

### CONCLUSION

Defendant gave clear, unequivocal expressions of consent to both the encounter and the search. Moreover, reviewing the totality of the circumstances, the Court concludes that the
17

relevant factors weigh in favor of finding that the encounter and search were consensual and voluntary, and not coerced. Defendant was not unlawfully seized. Therefore, Defendant's motion is in large part denied. However, the statement referenced above is excluded as agreed to by the Government.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Suppress Evidence **(Doc. 58)** is **DENIED IN PART** and **GRANTED IN PART.**

_____
CHIEF UNITED STATES DISTRICT JUDGE