# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                                         Case No. 1:17-cr-002236 WJ

DULCE ISABEL RAMOS-BURCIAGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S RENEWED MOTION TO COMPEL DISCOVERY

THIS MATTER comes before the Court on Defendant's Renewed Motion to Compel Discovery, filed August 6, 2018 **(Doc. 76).** Having considered the parties' written and oral arguments and applicable law, the Court finds that Defendant's motion is well-taken and, therefore, is **GRANTED.** The Government shall produce certain discovery, as ordered herein. Moreover, the suppression hearing shall be reopened on the limited grounds stated herein.

## BACKGROUND

Defendant was charged with possession with the intent to distribute one kilogram or more of heroin pursuant to 21 USC § 841(a)(1) and § (b)(1)(A). On August 4, 2017, Defendant was arrested at the Greyhound Bus terminal in downtown Albuquerque. Special Agent Jarrell Perry conducted a search of Defendant's bag and found heroin.

    **I.**     **Prior Litigation in this Case**.

Upon Defendant's motion, a Fed. R. Crim. P. 17(c) subpoena was issued to Greyhound, returnable to the Court. A Notice of Receipt was entered by the Court, directing the parties to contact the Court for inspection of the documents. **Doc. 22.** Multiple passenger manifests were

produced, but video of the encounter between Agent Perry and Defendant was not. Defendant's name was not on any of the passenger manifests produced. It is unclear whether the passenger manifest for Defendant's bus was produced, because the passenger manifests list a *departure* time from Phoenix, while Defendant only provides the *arrival* time for her bus into Albuquerque. The Government argues that the wrong list was sent by Greyhound. Defendant argues that this omission supports her theory that Agent Perry obtained information about her from some other, secret source. In other words, Defendant argues that the lack of a passenger manifest with her name on it supports her theory that Agent Perry conducted "Parallel Construction" - as in he had secret sources of information, aside from the passenger manifest, that led him to target Defendant.

At an October 26, 2018 status conference, Greyhound represented that they had found a passenger manifest with Defendant's name on it, and would produce it.

The parties have extensively litigated this case. In her First Motion to Compel, Defendant sought certain discovery, including:

> a) Any and all material and witnesses Special Agent Perry, or his partner, Agent Pantoja, relied upon, consulted, or otherwise considered in identifying Ms. Ramos-Burciaga as a target of investigation.
>
> b) Any and all information regarding any investigation, information sharing, research, or other data gathering involving Ms. Ramos-Burciaga that preceded the audio-recorded encounter with Special Agent Perry.

**Doc. 36, p.2**. The Court denied the first motion to compel, on the Government's representation that the evidence either did not exist or was not in the possession of the United States, including any federal agency that worked on the case. **Doc. 57.** The Court also noted that the duty to comply with *Brady* rests with prosecution, and the prosecution had the duty to inquire with the relevant federal agencies about the existence of the requested discovery and alert the Court to its existence so a *Brady* ruling could be made. **Doc. 57, p 5-6.**

2

Defendant also filed a Motion to Suppress, seeking to exclude certain evidence on the basis that the encounter and search were not consensual. **Doc. 58.** The Court denied the motion, relying in part on a favorable credibility determination of Agent Perry, based on the record before the Court at the time. **Doc. 87.**

At the suppression hearing, Agent Perry testified that he consulted a confidential source and obtained a passenger manifest list. He testified that based on his review of the passenger manifest, he knew whether Defendant checked luggage, where she was traveling from and where she was heading. He testified that when he approached her, he did not know who she was.

## II. <u>Renewed Motion to Compel</u>.

Based on that testimony, Defendant filed her Renewed Motion to Compel, seeking the passenger manifest, and any statements by Agent Perry about the passenger manifest's existence. Specifically, Defendant seeks the following discovery:

> 1) Any and all material and witnesses Special Agent Perry, or his partner, Agent Pantoja, relied upon, consulted, or otherwise considered in identifying Ms. Ramos-Burciaga as a target of investigation.
>
> 2) Any and all information regarding any investigation, information sharing, research, or other data gathering involving Ms. Ramos-Burciaga that preceded the audio-recorded encounter with Special Agent Perry.
>
> 3) the passenger manifest list previously requested by Defendant;
>
> 4) statements by Agent Perry to the Government about the existence of requested discovery.

Defendant argues that the Government previously denied the existence of the passenger manifest list, so either (1) the Government failed to follow the Court's order in inquiring into the existence of the manifest, or (2) Agent Perry lied to the Government about the existence of the manifest.

3

The Government asserts that Agent Perry regularly destroys the passenger manifest after reviewing it.

Defendant also seeks to reopen the hearing on the Motion to Suppress, on the basis that certain discovery was not provided to her and she therefore could not effectively cross-examine Agent Perry and attack his credibility.

In filings before this Court, the Government has stated that it need not produce the passenger list, because it is not relevant, not *Brady* material, and already in Defendant's possession. However, the United States represented that it disclosed all evidence in its file. **Doc. 43, p.5.**

## DISCUSSION

I. **Requested Discovery is Relevant *Brady* Material and Subject to Disclosure.**

The Government argues that the requested material is irrelevant and not *Brady* material. The Court disagrees.

A. ***Brady* law.**

"Due process mandates disclosure by the prosecution of all evidence that favors the defendant and is 'material either to guilt or punishment.'" *United States v. Robinson,* 39 F.3d 1115, 1118 (10th Cir.1994)) (quoting *Brady,* 373 U.S. at 87, 83 S.Ct. 1194); *United States v. Velarde*, 485 F.3d 553, 558–59 (10th Cir. 2007). Evidence is favorable if it is exculpatory or impeaching. *Douglas v. Workman*, 560 F.3d 1156, 1172–73 (10th Cir. 2009), *citing United States v. Bagley,* 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Cooper*, 654 F.3d 1104, 1119 (10th Cir.

2011); *see also United States v. Torres*, 569 F.3d 1277, 1281 (10th Cir. 2009) ("A defendant who seeks a new trial based on an alleged *Brady* violation must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defendant, and (3) the evidence was material.").

### B. **Impeachment Evidence.**

"Impeachment evidence is exculpatory for *Brady* purposes." *Cooper*, 654 F.3d at 1119; *United States v. Torres*, 569 F.3d 1277, 1282 (10th Cir. 2009). "Because of the value of cross-examination, when the credibility of a prosecution witness is important, impeaching evidence is subject to *Brady* disclosure." *Nuckols v. Gibson*, 233 F.3d 1261, 1267 (10th Cir. 2000).

Moreover, "[s]uppressed evidence that significantly enhanc[es] the quality of the impeachment evidence usually will satisfy the materiality standard." *Cooper*, 654 F.3d at 1120, *quoting Douglas,* 560 F.3d at 1174. Thus, impeachment evidence is material under *Brady* where (1) credibility of a central witness is at issue, and (2) it is not cumulative of other impeachment evidence. *See, e.g., United States v. Espinoza*, 545 F. App'x 783, 786 (10th Cir. 2013); *See also Robinson,* 583 F.3d at 1271 ("[H]is testimony was central—indeed essential—to the government's case.... It is not a stretch to say that the guilty verdict in this case depended upon the [confidential informant's] testimony."); *Douglas,* 560 F.3d at 1175 ("[The witness] was an indispensable witness for the State's case against [the defendant].... Because impeachment of the witness who held the key to the successful prosecution of [the defendant] was denied to the defense, the district court correctly concluded that the State's *Brady* violations were material."); *Nuckols,* 233 F.3d at 1266 ("[The witness's] trial testimony was key to a successful prosecution.... If [the witness's] testimony that Mr. Nuckols initiated the interrogation were impeached, the entire support for the State's case would have been significantly undermined, if not destroyed altogether.")

### C. **Requested Discovery is *Brady* material.**

5

The requested discovery tends to impeach Agent Perry and attack his credibility and is therefore favorable to Defendant. The requested discovery could bear on whether Agent Perry mislead the Government as to the existence of certain discovery, and whether he in fact used the passenger list as he described at the suppression hearing.

Moreover, the impeachment evidence is material. Agent Perry's testimony will likely be critical to the Government's case, and any guilty verdict will likely depend on his testimony. Evidence that he lied in this case about the existence of evidence would tend to attack his credibility.

D. **Government's Duty to Investigate.**

"Moreover, the [*Brady]* rule encompasses evidence known only to police investigators and not to the prosecutor. In order to comply with *Brady,* therefore, the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Strickler v. Greene*, 527 U.S. 263, 280–81, 119 S. Ct. 1936, 1948, 144 L. Ed. 2d 286 (1999) (internal citations and quotation marks omitted), *citing Kyles,* 514 U.S., at 437, 115 S.Ct. 1555; *see also United States v. Velarde*, 485 F.3d 553, 558–59 (10th Cir. 2007) ("Accordingly, a defendant may base a *Brady* claim on a government investigator's failure to disclose evidence material to guilt or punishment, even when the prosecutor personally did not know of that evidence."), *citing Kyles v. Whitley,* 514 U.S. 419, 437–38, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). A prosecutor may have a duty to search files maintained by other governmental agencies closely aligned with the prosecution' when there is some reasonable prospect or notice of finding exculpatory evidence." *United States v. Rivas*, 26 F. Supp. 3d 1082, 1111–12 (D.N.M. 2014),

Therefore, the Court directs the Assistant U.S. Attorneys assigned to this case to search the relevant agency files for the requested discovery, and to ask the relevant agents, including Agent Perry, about the existence of the requested discovery. *See, e.g, United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *20 (D.N.M. Apr. 11, 2016) (Browning, J.) (directing Government to search agency files for *Brady* or *Giglio* material).

## II. Requested Discovery is not Protected by Informant or Law Enforcement Privileges.

The Government appears to assert that the confidential source and the passenger list are protected by the informant privilege and law enforcement privilege, citing to *Roviaro v. United States,* 353 U.S. 53, 60–61, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957). The Government does not assert that any other requested discovery is covered by a privilege.

### A. Informant's Privilege.

As to the informant privilege, there is "no fixed rule" in determining whether "disclosure is justifiable," but the Court must balance

> the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

*Roviaro*, 353 U.S. at 62, 77 S.Ct. 623. "Where it is clear that the informant cannot aid the defense, the government's interest in keeping secret his identity must prevail over the defendant's asserted right of disclosure." *United States v. Sinclair,* 109 F.3d at 1538, *quoted in United States v. Rivas*, 26 F. Supp. 3d 1082, 1117 (D.N.M. 2014). However, when a CI is a "participant in and a material witness to" the alleged criminal transaction, the disclosure of his or her identity is sometimes required. *Roviaro v. United States*, 353 U.S. at 65. The standard for disclosure of CIs who play an active, as opposed to a passive, role in the investigation is not fixed; rather, the court must consider:

"(1) the crime charged, (2) the possible defenses, (3) the possible significance of the informer's testimony, and (4) other relevant factors." *Roviaro v. United States*, 353 U.S. at 62.

Here, the informant had no active role in this case. It does not appear that any of the requested discovery would reveal the identity of the informant. Therefore, the informant privilege does not apply.

### B. Law Enforcement Privilege.

The Government also summarily argues that the law enforcement privilege applies to bar discovery of the *passenger manifest*. The Government does not explain how that privilege applies here. The Court has reviewed the Government's citations, and none of them appear to apply to the law enforcement privilege. *See* **Doc. 85, p2**. Moreover, the Government does not assert that the privilege applies to any other requested discovery.

The law enforcement investigative privilege is "based primarily on the harm to law enforcement efforts which might arise from public disclosure of ... investigatory files." *United States v. Winner*, 641 F.2d 825, 831 (10th Cir. 1981). The Government must specify "with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." *Id.* The party claiming the privilege bears the burden of showing the privilege applies. *In re United Telecommunications, Inc. Sec. Litig.,* 799 F.Supp. 1206, 1208 (D.D.C.1992), *cited in Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, 1995 WL 104835, at *1 (D. Kan. 1995).

If the law enforcement privilege does apply, the Defendant bears the burden of showing a substantial need for the documents and her inability to obtain their substantial equivalent by other means. *Carbajal v. Warner*, 2015 WL 1945129, at *3 n.4 (D. Colo. 2015), *quoting In re M & L Bus. Mach. Co., Inc.,* 161 B.R. 689, 693 (D.Colo.1993); *see also In re The City of New York*, 607

F.3d 923, 945 (2d Cir. 2010) (To rebut that presumption, the party seeking disclosure must show (1) that its suit is "non-frivolous and brought in good faith," (2) that "the information sought is [not] available through other discovery or from other sources," and (3) that the information sought is "importan[t]" to the party's case.), citing *Friedman v. Bache Halsey Stuart Shields, Inc.,* 738 F.2d 1336, 1343 (D.C.Cir.1984).

The Court is not convinced that the law enforcement privilege applies to the passenger manifest. The requested discovery does not appear to reveal law enforcement techniques or procedures, reveal confidential sources, or otherwise interfere with the investigation. Rather, the requested discovery seeks to determine whether the Government complied with a Court order, and whether a case agent made false statements about the existence of certain discovery.

It is not a secret that Agent Perry uses passenger manifests, as disclosed in other cases. *See, e.g., United States v. McKenzie*, 779 F. Supp. 2d 1246, 1252 (D.N.M. 2011) (Agent Perry testified that he coordinated payment to a confidential source at AmTrak), *aff'd*, 532 F. App'x 793 (10th Cir. 2013). Further, is unclear what harm would arise to the DEA from disclosure of the passenger manifest itself.

Even if the privilege did apply, the Court concludes that the privilege should be overridden because the Defendant has shown a substantial need for the documents and her inability to obtain their substantial equivalent by other means. Initially, Greyhound responded to Defendant's subpoena with a number of passenger manifests, which do not appear to be the one Agent Perry used. At an October 26, 2018 status conference, Greyhound represented that they would produce a passenger manifest list with Defendant's name on it.

The Court finds that is relevant to the suppression hearing and cross-examination of Agent Perry for Defendant to know the *exact document* Agent Perry consulted prior to his encounter with

9

Defendant. It appears the only one who can resolve that is Agent Perry. Moreover, Defendant has asserted a plausible claim that the passenger manifest is *Brady* evidence, and she has a substantial need for it as impeachment evidence.

Therefore, the Court concludes that the Government should inquire again with Agent Perry whether he still possesses a passenger manifest, and if so, produce it.

### C. Touhy Regulations.

Neither party has addressed whether the *Touhy* regulations apply to requested discovery in this motion. The Government did not raise the *Touhy* regulations as a defense to this Motion to Compel, therefore the Court concludes there is no objection on the basis of the *Touhy* regulations. The Court notes that in other proceedings in this case, Defendant has complied with *Touhy* regulations. *See* **Doc. 66, p. 10.**

If the Government intends to raise a privilege again at any subsequent hearing, it is up to Defendant to ensure that the *Touhy* regulations are satisfied (if they have not already been). In other words, the Court does not want any *Touhy* issues to derail any hearing. Moreover, based on the analysis above, the Court is likely to overrule any renewed claim of privilege, unless the Government shows cause otherwise.

### III. Motion to Suppress Hearing Reopened for Limited Purpose.

Defendant also requests to reopen the motion to suppress hearing for the limited purpose of cross-examining Agent Perry, to attack his credibility, on his use of the passenger manifest list and his statements to the Government about the existence of the requested discovery. The Government argues that Defendant already had the chance to cross-examine Agent Perry and question him about his use of the passenger manifest list.

Reopening a hearing is in the discretion of the Court. *United States v. Wiseman,* 172 F.3d 1196, 1207–08 (10th Cir.1999), *cited in United States v. Harmon*, 742 F.3d 451, 459 (10th Cir. 2014). It is unclear whether a suppression hearing should be reopened based on a failure to provide *Brady* evidence, because it is debatable whether or not *Brady* applies to a suppression hearing. *United States v. Hykes*, No. CR 15-4299 JB, 2016 WL 1730125, at *19 (D.N.M. Apr. 11, 2016) (determining that *Giglio* does not require production of impeachment evidence prior to suppression hearing, but requiring Government to search Agent's personnel files prior to trial); *United States v. DeLeon*, No. CR 15-4268 JB, 2017 WL 2271427, at *30 (D.N.M. Mar. 8, 2017) (*Brady* does not apply to suppression hearings, because "suppression hearings do not determine a defendant's guilt or punishment"). The Tenth Circuit also expressed doubt, but did not decide, whether *Brady* applied to suppression hearings. *United States v. Lee Vang Lor*, 706 F.3d 1252, 1256 n.2 (10th Cir. 2013).

However, the Government's failure to produce impeachment evidence may deprive a defendant of a full and fair evidentiary hearing. *See, e.g., United States v. Lee Vang Lor*, 706 F.3d 1252, 1259 (10th Cir. 2013) ("Whether or not *Brady* applies at the suppression stage, we can at least assume that Defendant might be deprived of a "full and fair evidentiary hearing" if the Government withholds material evidence."), *citing Cook,* 997 F.2d at 1318.

The Government did not produce the passenger manifest to Defendant prior to the hearing and appears to have denied its existence. Whether the Government denied its existence is debatable, as the Government also stated that the passenger manifest need not be produced, because Defendant already possessed it, and it was not *Brady* material. **Doc. 43.** The Court agrees that having the passenger manifest is likely useful for an effective cross-examination of Agent

11

Perry and determination of his credibility. Agent Perry's testimony, as well as the audio recording, were relied upon by the Court in denying the Motion to Suppress.

Moreover, Defendant plausibly alleges that Agent Perry's statements at the suppression hearing may conflict with pleadings filed by the Government. That determination cannot be made without production of Agent Perry's answers to the Government's inquiries about the existence of the requested discovery. These statements were not available to Defendant prior to the suppression hearing.

Therefore, the Court will reopen the suppression hearing after Defendant has had a reasonable time to obtain the passenger manifest. The hearing will be limited to the narrow issues related to the production of the requested discovery and Agent Perry's use of the passenger manifest.

## CONCLUSION

In sum, the Government is ordered to produce the following discovery in its possession:

1) Any and all material and witnesses Special Agent Perry, or his partner, Agent Pantoja, relied upon, consulted, or otherwise considered in identifying Ms. Ramos-Burciaga as a target of investigation.

2) Any and all information regarding any investigation, information sharing, research, or other data gathering involving Ms. Ramos-Burciaga that preceded the audio-recorded encounter with Special Agent Perry.

3) the passenger manifest list requested by Defendant and used by Agent Perry;

4) statements by Agent Perry to the Government about the existence of requested discovery.

Additionally, the Court will reopen the suppression hearing and allow Defendant to cross-examine Agent Perry as specified above. The Court also directs the Assistant U.S. Attorneys assigned to this case to search the relevant case files at the DEA or other relevant agencies, and to ask the relevant agents, including Agent Perry, about the existence of the requested discovery.

**IT IS THEREFORE ORDERED** that Defendant's Renewed Motion to Compel Discovery **(Doc. 76)** is **GRANTED.**

**IT IS FURTHER ORDERED** that the Government is directed to produce the discovery outlined above, consistent with this opinion. **IT IS FINALLY ORDERED** that the Motion to Suppress hearing shall be reopened following Defendant's receipt of the passenger manifest.

_____
CHIEF UNITED STATES DISTRICT JUDGE