IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                        Case No. 1:17-cr-002236 WJ

DULCE ISABEL RAMOS-BURCIAGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DENYING GOVERNMENT'S MOTION TO RECONSIDER REOPENING SUPPRESSION HEARING

THIS MATTER comes before the Court on the Government's Amended Motion for Reconsideration of the Court's Memorandum Opinion and Order Granting the Defendant's Motion to Compel Discovery and Motion to Reopen Suppression hearing, filed November 27, 2018 (**Doc. 100**). The Government attaches new evidence to its motion to reconsider and states that the reopened suppression hearing is unnecessary. Having considered the parties' written arguments and applicable law, the Court finds that Government's motion is not well-taken and, therefore, is **DENIED.** The Court will hold a limited hearing to allow Defendant (1) to cross-examine SA Perry about how he used the passenger manifest list and (2) to ask whether he has been truthful in this case about the existence of the passenger manifest list. However, Defendant's requests for relief in her response **(Doc. 102)** are **DENIED.**

### BACKGROUND

Early on in this case, Defendant filed a motion to compel discovery **(Doc. 36)**. The Court denied Defendant's first motion to compel discovery, noting that the Government "asserts that the requested discovery does not exist or is not in the possession of the United States, including the

possession of any federal agency that worked on the investigation. The Government also asserts that any material that does exist has been turned over." **Doc. 57.** The Court also directed the United States, if it had not yet done so to inquire "whether the relevant federal agencies possess the requested material." *Id.*

The Court held a suppression hearing on whether Defendant's consensual encounter and search was voluntary or coerced in violation of the Fourth Amendment. The Court denied the Defendant's suppression motion.

Defendant then filed a renewed motion to compel and to reopen the suppression hearing. **Doc. 76.** That motion arose out of Special Agent Perry's statements at the suppression hearing that he had used a passenger manifest list in this case, supplied from someone within Greyhound. While SA Perry commonly uses passenger manifest lists in other cases, that was the first time he stated on the record he used one in this case. That passenger manifest list was not produced in discovery, which spurred Defendant to file a renewed motion to compel discovery of the passenger manifest and to reopen the suppression hearing.

The Court held a hearing on the renewed motion to compel. The undersigned asked the Government why it opposed reopening the suppression hearing, noting:

> If Greyhound produces the passenger list …Then at that point, Perry can be cross-examined again for the purposes of Mr. Fernandez attempting to impeach him… because I made credibility determinations on his testimony for the suppression. Then that record is made, and then we'd go ahead and move on.

**Doc. 95, p. 38.** The Court granted Defendant's renewed motion, noting that it was unclear why the passenger manifest list was not produced, and that Defendant was likely deprived of the ability to effectively cross-examine SA Perry. **Doc. 92.** In other words, the Court concluded a reopened suppression hearing was necessary to have a careful and fully informed credibility determination

2

of SA Perry. Since then, SA Perry obtained a copy of the passenger manifest from the confidential source and produced it to Defendant.

## DISCUSSION

I. **Government's Request to Reconsider Reopening of the Suppression Hearing is Denied.**

The Government argues that the Court should reconsider reopening the suppression hearing because new evidence shows that the Government's failure to produce the passenger manifest was not the fault of SA Perry.

In its motion to reconsider, the Government outlined the factual background of this case and why the passenger manifest was not produced by the Government. The Government also attached AUSA Armijo's interview notes with SA Perry, which indicate that SA Perry told the Government about the passenger manifest early on in this case. The Government represents that the passenger manifest was not previously disclosed because the Government thought it was already disclosed by Greyhound in this case. Once the Government realized that the passenger manifest had not been produced by Greyhound, the Government produced it. The Government argues that any failure to produce the passenger manifest falls on the Government and not SA Perry, and therefore cross-examination of SA Perry is unnecessary.

Defendant appears to argue that the Government intentionally mislead the Court about the existence of the passenger manifest. The Court has no doubt that the USAO and the attorneys assigned to this case did not intentionally mislead the Court or intentionally fail to comply with the Court's discovery order. Based on the Government's representations, it appears that any error was in good faith, because the (1) the passenger manifest was not in the possession of SA Perry, and (2) the Government believed that the list need not be produced, because Greyhound had

3

already provided it. Notably, when Greyhound produced the passenger manifests to the Court, the Government never made arrangements to inspect them. **Doc. 22.** Therefore, the Government did not know that Greyhound did not submit the passenger manifest used by SA Perry until Defendant filed her renewed motion to compel discovery.

However, this does not change the need to allow Defendant the opportunity to cross-examine SA Perry at a reopened suppression hearing. The Court denied Defendant's suppression motion in part based on a favorable credibility determination of SA Perry. The Government appears to request that the Court make a credibility determination of SA Perry based on the representations in the reconsideration motion. The Court cannot do that. For the Court to make a fully informed and careful credibility determination of SA Perry, Defendant needs an opportunity to adequately cross-examine SA Perry at an evidentiary hearing. Moreover, Defendant was deprived of the opportunity to effectively cross-examine SA Perry on his use of the passenger manifest without having the passenger manifest in front of her.

Therefore, the Court **DENIES** the Government's motion for reconsideration. A reopened suppression hearing will be held on the limited topics specified below.

II. **Court will not order Government to reveal identity of confidential informant or allow informant to be questioned.**

Defendant argues that she must be allowed to find out the identity of the confidential informant and question the confidential informant. The Government argues that the (1) confidential source and (2) the handwritten annotations on the passenger manifest are privileged and not subject to disclosure.

A. **Confidential Informant.**

Generally, "[d]isclosure is not required when the informer is not a participant in, or witness to, the crime charged." *United States v. Ortiz*, 804 F.2d 1161, 1166 (10th Cir. 1986). Here, the confidential informant provided a passenger manifest with handwritten annotations to SA Perry. SA Perry has been consistent in this case and others that he merely obtains a passenger manifest from the confidential informant. Therefore, the Court finds there is nothing in the record to indicate that the informant was a participant in or witness to the crime charged. *United States v. Zamora*, 784 F.2d 1025, 1030 (10th Cir. 1986) (disclosure not required where informant is mere tipster and not involved in or witness to criminal activity).

Moreover, the informant's testimony is likely to be merely cumulative of SA Perry's testimony. *See United States v. Scafe*, 822 F.2d 928, 933 (10th Cir. 1987) ("Disclosure of an informant is not required where the information sought from him would be merely cumulative, or where the informant is not a participant in the transaction in question."). SA Perry is likely able to testify to his use of the passenger manifest and his understanding of what the handwritten annotations mean and where they came from. Revealing the identity of the confidential informant or allowing the informant to be questioned will not add anything else to the hearing and will instead merely serve to stifle law enforcement investigations.

Defendant argues that the information from the informant may have come from some illegal source or that additional information may have been given to SA Perry. But the testimony has been consistent that the passenger manifest comes from an employee who works at Greyhound. There is nothing in the record to indicate that the passenger manifest came from some other source, or that there was some prior illegal search or detention that made Defendant's consent involuntary. Defendant's mere suspicions are not sufficient to carry her "burden of demonstrating a need for disclosure." *United States v. Vincent*, 611 F.3d 1246, 1251 (10th Cir. 2010); *United States v. Scafe*,

822 F.2d 928, 933 (10th Cir. 1987) ("this court has held that mere speculation about the usefulness of an informant's testimony is not sufficient."). The informant's testimony is not relevant to the voluntariness of Defendant's consent to the encounter and search, which was the subject of the suppression hearing.

Defendant argues that SA Perry may have engaged in "Parallel Construction", in which he allegedly used an undisclosed, potentially illegal source of information on Defendant. But the Court is not reopening the suppression hearing to litigate other alleged constitutional violations. The suppression hearing focused on whether Defendant's consensual encounter with SA Perry was voluntary or coerced in violation of the Fourth Amendment. The suppression hearing was reopened solely to allow Defendant to cross-examine SA Perry to test his credibility and cross-examine him on his statements about how he used the passenger manifest. The Court will not allow Defendant to expand this suppression hearing beyond those matters.

Notably, Defendant already asked SA Perry about parallel construction at the suppression hearing in this case. **Doc. 80, p. 30-33.** SA Perry testified that he does not utilize it. This is supported by his testimony that he uses a confidential informant within Greyhound. The confidential informant, whose use has been revealed in this case, is unlikely to add anything else to the record on parallel construction.

Moreover, there is no indication that SA Perry's consensual search was preceded and tainted by a Fourth Amendment violation, such as a prior illegal search or detention. There is no evidence that SA Perry pre-searched Defendant's bags prior to approaching her, and there is no indication that receiving a passenger manifest from a third-party within Greyhound was a constitutional violation. Therefore, it is unclear how the confidential informant's testimony would aid the Defendant in this suppression hearing.

The Court concludes that the identity and testimony of the confidential informant is irrelevant to this matter. Therefore, the Court will prohibit any questions that reveal the identity of the confidential source. As explained below, the Court will allow Defendant to ask SA Perry his understanding of what the handwritten annotations mean, because they do not tend to reveal any investigative techniques that haven't already been revealed. However, the Court will not allow Defendant to question any confidential source about the meaning of the handwritten annotations.

### B. <u>Handwritten Annotations.</u>

The Government appears to argue that the law enforcement privilege applies to the handwritten annotations on the passenger manifest, and therefore seeks to prohibit any questions about them. The Law Enforcement privilege's purpose "is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *United States v. Myerson (In re Dep't of Investigation),* 856 F.2d 481, 484 (2d Cir. 1988), *cited in In re The City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). The party claiming the privilege bears the burden of showing the privilege applies. *In re United Telecommunications, Inc. Sec. Litig.,* 799 F.Supp. 1206, 1208 (D.D.C. 1992), *cited in Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. F.D.I.C.*, 1995 WL 104835, at *1 (D. Kan. 1995). The law enforcement "privilege may be overridden by the movant's substantial need for the documents and [his] inability to obtain their substantial equivalent by other means." *Carbajal v. Warner*, 2015 WL 1945129, at *3 (D. Colo. 2015), *quoting In re M & L Bus. Mach. Co., Inc.,* 161 B.R. 689, 693 (D. Colo. 1993).

The passenger manifest along with the markings has already been produced without any assertion that the law enforcement privilege bars production of the *handwritten annotations*.

7

Moreover, SA Perry has already testified (in this case and others) that he obtains information such as originating cities, whether a ticket was paid with cash, and whether tickets were bought together. Therefore, these markings appear to provide information that has already been revealed, and the Court does not see how the law enforcement privilege now applies.[1] SA Perry can testify about what he understands those markings to mean.

However, the Court will sustain any objection to questions that tend to reveal the confidentiality of sources or jeopardize the privacy or safety of individuals involved in investigations.[2]

### III. Matters to be heard at reopened suppression hearing.

The Court reopened the suppression hearing to allow Defendant to cross-examine SA Perry with the passenger manifest in her possession, and to ask him his role in the discovery of the passenger manifest in this case. **Doc. 92.** Therefore, the Court will allow Defendant to cross-examine SA Perry about his use of the passenger manifest and his understanding of the handwritten annotations. The Court will sustain any objections to questions that tend to reveal the identity of the confidential informant. Moreover, the Court will allow Defendant to question SA Perry as to whether he was consistent about the existence of a passenger manifest in this case.

### IV. Government has otherwise complied with Renewed Discovery Order.

Defendant argues that the Government still has not complied with the Court's discovery order **(Doc. 92)**. The Government represents that it has complied with the Court's discovery order by providing Defendant with the passenger manifest list. It also represents that there is no further

---

[1] The Government appears to agree that the handwritten annotations provide this information. *See* **Doc. 103, p. 3** ("In fact, the handwritten notes on the list obviously support SA Perry's prior testimony - noting for example which tickets were paid for in cash and the origination cities for some of the passengers.")

[2] As explained in the Court's prior MOO **(Doc. 92)**, the Court expects Defendant to comply with any *Touhy* regulations, to the extent applicable.

discovery or information. The Court has no reason to doubt these representations. Any prior failures to provide discovery were good faith mistakes. SA Perry's investigative techniques are well-known, as testified to in this case. SA Perry has testified that he consults a passenger manifest from a confidential source within Greyhound. There is nothing in the record to believe he receives anything else. Therefore, the Court concludes that the Government has complied with the Court's MOO regarding discovery. **Doc. 92.**

V.     **Jencks Act.**

Defendant argues that AUSA Armijo's handwritten notes of his interview of SA Perry are Jencks act material which were hidden, and requests that the Court order the Government to hand over any other Jencks act material.

The Court doubts that AUSA Armijo's handwritten notes are statements subject to the Jencks act. *See* 18 U.S.C. § 3500(e). They are not "substantially verbatim" and not in the nature of a "complete recital that eliminates the possibility of portions being selected out of context." *United States v. Jackson*, 850 F. Supp. 1481, 1509 (D. Kan. 1994)[3], *citing United States v. Bobadilla–Lopez,* 954 F.2d 519, 522 (9th Cir.1992), *cert. denied,* 506 U.S. 1056, 113 S.Ct. 987, 122 L.Ed.2d 139 (1993); *See United States v. Smith* 984 F.2d 1084, 1086 (10th Cir.) (citation omitted), *cert. denied,* 510 U.S. 873, 114 S.Ct. 204, 126 L.Ed.2d 161 (1993) ("interview notes could be 'statements' under the Act [18 U.S.C. § 3500(e)(2) ] if they are substantially verbatim recitals of a witness's oral statement and are recorded contemporaneously with the interview.").

Nevertheless, the Court notes that Defendant's allegations that the Government has been hiding Jencks act material is baseless, given that the requirement to produce Jencks act material does not arise until trial. *See* 18 U.S.C. § 3500(a) (no statement by made by government witness

---

[3] Defendant cites to this case as a Tenth Circuit case, but it is not.

shall be subject to discovery until said witness has testified on direct examination); *United States v. Lujan*, 530 F. Supp. 2d 1224, 1253–54 (D.N.M. 2008); *United States v. Nevels*, 490 F.3d 800, 803 (10th Cir. 2007) ("The Jencks Act entitles a federal criminal defendant to obtain any pretrial statement and report made by a government witness, but only *after* the witness has testified on direct examination at trial."). Defendant has cited to no authority that she is entitled to Jencks act material prior to a suppression hearing.

The Government is otherwise aware of its duty to produce Jencks Act material and is expected to comply with the act.

## CONCLUSION

The Government's motion to reconsider reopening the suppression hearing is **DENIED.** This matter will be set for a reopened suppression hearing on the above stated limited grounds.

**IT IS SO ORDERED.**

_____
CHIEF UNITED STATES DISTRICT JUDGE