# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

    vs.                                                                        Case No. 1:17-cr-002236 WJ

DULCE ISABEL RAMOS-BURCIAGA,

    Defendant.

## MEMORANDUM OPINION AND ORDER MAKING SUPPLEMENTAL FINDINGS ON SPECIAL AGENT PERRY'S CREDIBILITY AT REOPENED SUPPRESSION HEARING

THIS MATTER comes before the Court on a reopened suppression hearing, to give the Defendant a further opportunity to cross-examine Special Agent Jarrell Perry and address his credibility. Considering the evidence at both suppression hearings, the transcripts, and the written argument of counsel, the Court continues to find SA Perry's testimony to be credible, and the Motion to Suppress **(Doc. 58)** remains **DENIED.**

## BACKGROUND

The extensive history of this case is detailed most recently in the Government's Motion to Reconsider reopening the suppression hearing **(Doc. 100),** and the Court's order denying the Government's motion to reconsider **(Doc. 105).** Although the Court denied the Government's motion to reconsider reopening the suppression hearing, the Court agrees with the Government's lengthy recitation of the procedural history of this case. The Court will not repeat it here. *See* **Doc. 100, p. 1-16.**

In short, this matter arises out of disputes over SA Perry's testimony at a suppression hearing and the production in discovery of a passenger list. SA Perry testified at the August 2018 suppression hearing that he had consulted a passenger list given to him by a confidential informant prior to his encounter with Defendant. This list had not been produced by the Government in discovery. The Court denied Defendant's Motion to Suppress (**Doc. 58**), concluding that Defendant's encounter with SA Perry was voluntary and consensual, and she was not unlawfully seized. **Doc. 87.** In making that determination, the Court found that SA Perry's testimony was credible. **Doc. 87, p. 4.** The Court subsequently granted Defendant's motion to reopen the suppression hearing. **Doc. 92**. The Court held a limited reopened suppression hearing to allow Defendant (1) to cross-examine SA Perry about how he used the passenger list in his investigation and (2) to cross-examine SA Perry about his role in the production of the passenger list. **Doc. 105.**

## DISCUSSION

### I. SA Perry's statements at the two suppression hearings were consistent.

Defendant admits that SA Perry's testimony was largely "truthful and accurate" but argues that SA Perry's testimony is "riddled" by material omissions which undermines his credibility. The Court disagrees. None of the alleged omissions negatively impact his credibility. Rather, the alleged omissions or inconsistencies in his testimony are largely a product of different and more in-depth questioning at the reopened suppression hearing. This is to be expected, as at the August 2018 suppression hearing, Defendant did not have the passenger list in her possession and did not extensively question SA Perry about the passenger list.

Defendant also argues that SA Perry intentionally omitted from the first suppression hearing that the confidential informant made handwritten annotations on the passenger list. But

nothing in the first suppression hearing would have prompted SA Perry to state that there were handwritten annotations. SA Perry was asked what he obtained from the confidential informant. He said he obtained the passenger list. SA Perry was not asked questions about what the list contained.

Moreover, Defendant argues that SA Perry hid the existence of the passenger list or disobeyed a Court order. As explained below, the Court disagrees. The Government has already extensively explained in detail why the failure to produce the passenger list was a mistake, and not intentional. **Doc. 100.** The Court found that explanation persuasive. **Doc. 105.** Additionally, the Court gave Defendant the opportunity to question SA Perry about the production of the passenger list. The Court finds his testimony credible that he did not possess the passenger list and did not hide the existence of the passenger list from the Government. In other words, the Court finds no misconduct on either SA Perry's or the Government's part.[1]

Therefore, the Court finds SA Perry's testimony at both suppression hearings to be credible, and no alleged omissions negatively affect his credibility.

## II. <u>SA Perry was consistent in his testimony that he did not know who Defendant was prior to asking her name</u>.

Defendant also argues that SA Perry lied at the August 2018 suppression hearing when he said he did not know who Defendant was prior to approaching her and asking her name. At the August 2018 suppression hearing, SA Perry stated "until I asked her for her ticket and her identification, I had no idea what her name was." **Doc. 80, p. 39.** Defendant argues that SA Perry knew who she was either based on the passenger list or a prior, undisclosed investigation, and the encounter was not random. As explained below, the Court disagrees.

---

[1] As explained previously, the Government reasonably believed the passenger list had been produced by Greyhound in response to Defendant's subpoena. **Doc. 105.**

SA Perry testified that he looks at passenger lists and examines several factors that may be consistent with drug trafficking, including whether passengers checked a bag, whether they paid in cash, approximately when they bought their ticket, whether they had their ticket reissued, where they're coming from, and where they're going. Based on those factors, he knows that he may wish to speak with certain passengers. Based on his examination of the passenger list, he wanted to speak with Defendant. However, there is nothing in the passenger list– such as photo identification – which would allow him to identify passengers prior to meeting them and asking their name.

SA Perry testified that there was nothing in the list that told him who the Defendant was, and that often the list has a name that does not match the identity of the person traveling. **Doc. 111, p.52.** This is consistent with his testimony at the first suppression hearing that he did not know who Defendant was until he approached her and asked her name.

### III. **SA Perry did not hide the existence of passenger list or disobey a court order.**

Defendant appears to argue that SA Perry lied about the existence of the passenger list or otherwise hid it from the Government. This extensive litigation arose out of SA Perry's statement at the initial suppression hearing that he received a passenger list from a confidential informant. Defendant believed that the Government inappropriately failed to produce the passenger list prior to the hearing, and subsequently sought the discovery of that passenger list and reopened suppression hearing to cross-examine SA Perry.

The Court had previously directed the Government to bring the existence of the passenger list to the Court's attention so that it could rule on whether it was discoverable. The Government took the position that it need not produce the passenger list, because it believed it was already produced by Greyhound. This was a reasonable interpretation of the order, however it turns out that Greyhound did not produce the correct passenger list.

The Court concluded there was no misconduct by the Government, **Doc. 105**, but allowed Defendant to cross-examine SA Perry to determine his role in its production. The Court finds that SA Perry's testimony at the reopened suppression hearing supports that conclusion. Based on SA Perry's statements at the hearing, the Court finds he had no role in any failure to produce the passenger list. SA Perry stated he told the government that he used a passenger list, but that he does not keep it. SA Perry did not have the list in his possession, and he was not asked to get a copy of it in response to Defendant's initial motion to compel discovery.

Defendant has repeatedly accused SA Perry and the Government of misconduct, but any failure to produce it was obviously a mere mistake, based on the assumption that Greyhound – which responded to the subpoena – had produced the correct passenger list. Moreover, once Defendant received a copy of the correct passenger list, the Court reopened the suppression hearing to allow Defendant the opportunity to question Agent Perry under oath about the passenger list.

### IV. No evidence of "parallel construction" or of prior, undisclosed investigation.

Defendant theorizes that there was a prior, undisclosed investigation that led SA Perry to view her as a suspect before approaching her. Defendant argues that SA Perry engaged in parallel construction to hide this prior investigation.[2] The Court finds there was no evidence that there was any prior investigation that has not already been disclosed.

Defendant argues that, based on SA Perry's alleged inconsistencies and omissions, the Court should infer that SA Perry engaged in a previous, as of yet undisclosed investigation. Defendant argues that SA Perry's obfuscation prevented her from finding evidence of this prior, undisclosed search or investigation. The Court finds that SA Perry has been truthful and consistent

---

[2] Parallel construction "refers to a method of law enforcement in which an alternative narrative is created to arrest someone after information from a secretive, and perhaps unlawful, source is obtained." **Doc. 36, p. 5.** In other words, Defendant alleges that SA Perry engaged in a potentially illegal, undisclosed search, which he has now covered up.

5

in this case about his use of the passenger list. Moreover, the Court finds the record is insufficient to make such a dramatic leap or inference that SA Perry engaged in parallel construction.

Rather, the evidence indicates that SA Perry examined the passenger list and identified, based on several factors on the list, people with whom he wished to speak. **Doc. 111, p. 49** ("The list just helps me identify people that I might be interested in speaking with. It's not a definitive list. We still get on the bus and talk to everybody. So, yes, I would have gotten on the bus and talked with every person on this list, which we do on a daily basis."). From there, he knew that Defendant was someone he wanted to talk to, but he did not know who she was until he approached her and asked her name. The Court finds nothing nefarious in this, considering SA Perry's decades of experience in approximately 1,500 narcotics cases.

## CONCLUSION

The Court has considered the testimony at the suppression hearings, the transcripts, and the written argument of counsel. The Court concludes that SA Perry did not disobey a court order or hide the existence of passenger list from the Government. Moreover, nothing in the reopened suppression hearing changes the Court's favorable credibility determination of SA Perry. The Motion to Suppress therefore remains **DENIED** for the reasons stated in the previous Memorandum Opinion and Order Granting in Part and Denying in Part Motion to Suppress **(Doc. 87).**

_____
WILLIAM P. JOHNSON
CHIEF UNITED STATES DISTRICT JUDGE